## THE CITY OF CHICAGO

*v.*

## THOMAS O'BRIEN.

*Filed at Springfield September 27, 1884.*

1. SIDEWALKS—*removal of snow and ice therefrom—liability of owners or occupants in respect thereto.* A city has not the constitutional power to require the owner or occupant of premises to keep the sidewalk and gutters in front thereof free from snow and ice, or to sprinkle the same with ashes or sand where the snow and ice can not be removed without injury to the pavement, and inflict a fine on him for a neglect or failure to do so,—adhering to the ruling in *Gridley* v. *City of Bloomington,* 88 Ill. 554.

2. SAME—*sidewalk as a part of the public highway.* A sidewalk in a city, though devoted to the use of pedestrians, is nevertheless a portion of a public highway, as much so as the street. They are both free to be properly used and enjoyed by the entire public, and are constructed alike for their use.

3. POLICE POWER—*as to public burdens imposed upon private individuals.* The police power of a State, comprehensive as it is, has its limitations. It can not be held to sanction the taking of private property for public use without just compensation, however essential it may be for the public health, safety, etc. Upon the like principle, a purely public burden can not be laid upon a private individual except as authorized in cases to exercise the right of eminent domain, or by virtue of proper proceedings to enforce special assessments or special taxation.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Criminal Court of Cook county; the Hon. GEORGE GARDNER, Judge, presiding.

This was an action by the city of Chicago, against Thomas O'Brien, for a violation of the ordinance hereinafter set out. The judgment of the circuit court of Cook county was in favor of O'Brien, and that judgment was affirmed in the Appellate Court for the First District.

The cause was, by agreement of parties, submitted to the court, without the intervention of a jury, upon the following agreed state of facts: That the said defendant was, at the

time hereinafter mentioned, the occupant of the premises known as No. 203 Centre avenue, which said premises were and are within the corporate limits of the said city of Chicago; that the said O'Brien, on, to-wit, the 18th day of February, 1884, and for a long time previous thereto, allowed the snow which had fallen, and the ice formed therefrom on a portion of the sidewalk hereinafter mentioned, to accumulate upon the sidewalk in front of said premises to the depth of from six to ten inches, and neglected and refused, and still neglects and refuses, to clear or cause the same to be cleared from said sidewalk, and where the said snow had so congealed that it could not be removed without injury to the said sidewalk, the said O'Brien neglected and refused, and still neglects and refuses, to strew the same with ashes or sand; that prior to the said 18th day of February, 1884, the city council of the city of Chicago had duly passed, and the same had been duly and properly approved and published, according to law and the statute in such case made and provided, the following ordinance, (Municipal Code, sec. 1955,) to-wit:

"Every owner or occupant of any house or other building, and the owner or proprietor, lessee or persons entitled to the possession of any vacant lot, and every person having the charge of any church, jail, or public hall or public building in this city, shall during the winter and during the time snow shall continue on the ground, by nine o'clock in the morning, when necessary, clear the sidewalk and gutters in front of such house or other building, and in front of such lot, from snow and ice, and keep them conveniently free therefrom during the day; or shall, in case the snow and ice are so congealed that they can not be removed without injury to the pavement, cause the said snow and ice to be strewed with ashes or sand; and shall also, at all times, keep such side-alk clear and free from all dirt, filth, or other obstructions incumbrances, so as to allow citizens to use the said side-w's in an easy and commodious manner; and every person

neglecting to comply with this section, shall incur a penalty of five dollars for each neglect or refusal."

And it is further agreed that said sidewalk is a part of one of the public streets or highways of said city.

Mr. GEO. MILLS ROGERS, and Mr. M. R. M. WALLACE, for the appellant:

The ordinance can be most properly upheld under the general police powers vested in the city. *Railroad Co.* v. *Dill,* 22 Ill. 265; *Bonsall* v. *Mayor,* 19 Ohio, 418; *Paxon* v. *Sweet,* 13 N. J. 196; *Washington* v. *Mayor,* 1 Swan, 177; *Mayor* v. *Maberry,* 6 Humph. 368; *Woodbridge* v. *City of Detroit,* 8 Mich. 274; *White* v. *Mayor,* 2 Swan, 364; *City of Boston* v. *Shaw,* 1 Metc. 107; *City of Lowell* v. *Hadley,* 8 id. 180; *Lowell* v. *French,* 6 Cush. 223; *Commonwealth* v. *Goddard,* Thatcher's C. C. 420; *Kirby* v. *Boylston Market Association,* 14 Gray, 249; *Goddard's case,* 16 Pick. 504; *Vandyke* v. *Cincinnati,* 1 Disney, 532; Cooley's Const. Lim. (5th ed.) 727.

Unless the General Assembly was prohibited by the constitution from granting such powers as have been enumerated, to the city, then such powers are not unconstitutional. Cooley's Const. Lim. (5th ed.) 106, 107, 218; *Railroad Co.* v. *Dill,* 22 Ill. 265; *Washington* v. *Mayor,* 1 Swan, 177; *Paxon* v. *Sweet,* 13 N. J. 196; *Woodbridge* v. *City of Detroit,* 8 Mich. 274; *In matter of Dorrance street,* 4 R. I. 230; *Deblois* v. *Baker,* id. 445.

In the following cases a distinction is recognized between the street or carriageway and the sidewalk: *Hart* v. *Brooklyn,* 36 Barb. 226; *Woodbridge* v. *City of Detroit,* 8 Mich. 274; *Goddard's case,* 16 Pick. 504; Cooley's Const. Lim. (5th ed.) 631.

A distinction is made between local improvements and repair as to mode of making same. Simple repairs are not in the nature of a local improvement. *Matter of Fulton stree* 29 How. Pr. 429; *People* v. *Brooklyn,* 21 Barb. 484.

Messrs. C. C. & C. L. BONNEY, and Mr. LYMAN M. PAINE, for the appellee:

The claim that the ordinance rests on the police power, is in conflict with the decisions of this court. *Ottawa* v. *Spencer*, 40 Ill. 213; *Gridley* v. *City of Bloomington*, 88 id. 557; *Carter* v. *Chicago*, 57 id. 286.

The ordinance does not provide for local improvements, and the burdens to which they relate must be borne by uniform taxation. Const. art. 9, sec. 9.

Mr. CHIEF JUSTICE SCHOLFIELD delivered the opinion of the Court:

It is conceded by counsel for appellant that this court, in *Gridley* v. *City of Bloomington*, 88 Ill. 554, decided the only question involved in this case, (namely, the validity of the ordinance under which the suit is prosecuted,) against appellant; but they contend that decision is based upon incorrect grounds, and should therefore be overruled. They contend that the ordinance is but a proper police regulation, and that, as such, it should be sustained. In support of this position they cite *Bonsall et ux.* v. *Mayor, etc.* 19 Ohio, 418, *Paxon* v. *Sweet*, 13 N. J. (1 Green,) 196, *Mayor, etc.* v. *Maberry*, 6 Humph. 368, *Washington* v. *Mayor, etc.* 1 Swan, (Tenn.) 177, *Woodbridge* v. *City of Detroit*, 8 Mich. 274, and other cases.

In *City of Chicago* v. *Larned*, 34 Ill. 203,—a case very 'aborately argued by able counsel,—the principle involved i the decisions of these cases was carefully considered, and it is held they could not apply here,—that they were decided under constitutions so materially different from ours, that the same line of reasoning is not applicable to both. And in *City of Ottawa* v. *Spencer*, 40 Ill. 211, which was a proceeding to charge the adjacent lot owner with the cost of building a sidewalk, the same question was again before the court, and

it was then insisted, as it is now, that the charges may be sustained as within the police power, but the position was held untenable. In passing upon this point, it was there said: "It is also urged that this may be referred to the police power of the State, which has been delegated to the city, and may therefore be properly exercised; and in support of the proposition we are referred to the decisions of the Supreme Court of Tennessee: *Mayor, etc.* v. *Maberry*, 6 Humph. 368; *Washington* v. *The Mayor and Aldermen of Nashville*, 1 Swan, 177; *White* v. *The Mayor and Aldermen of Nashville*, 2 id. 364. These cases go to the length of sustaining the doctrine contended for by plaintiffs in error. They announce the doctrine that such improvements may be compelled under the general police power. If this be so, by an exercise of the same power we presume that the owner could be compelled to construct and keep in repair public roads, bridges and culverts fronting upon or running through his lands, or the owner of a city or village lot could be compelled to make and repair the street in front of his property. A sidewalk is a portion of a public highway, appropriated, it is true, to pedestrians alone, but still open and free to all persons desiring to use and enjoy it as a public highway. It is as much a public highway in the mode of its use as the street itself. The difference in the manner of their use does not render one public, more than the other. They are both free to be properly used and enjoyed by the entire public, and are constructed alike for their use. That the legislature may afford the necessary power of constructing such improvements so essentially necessary to the comfort and convenience of the community, is apparent; but under our constitution we think the mode authorized in this case is not sanctioned, and that the principles announced in the case of *Larned* v. *The City of Chicago* fully govern and control this case."

Even the police power, comprehensive as it is, has some limitations. It can not be held to sanction the taking of

private property for public use without making just compensation therefor, however essential this might be, for the time, to the public health, safety, etc.   And upon like principle, a purely public burden can not be laid upon a private individual, except as authorized in cases to exercise the right of eminent domain, or by virtue of proper proceedings to enforce special assessments or special taxation.   The drainage of malarial swamps would surely largely contribute to promote the public health; but could it be contended that therefore the burden of such drainage may be laid upon some single person to be arbitrarily selected, or upon those who happen to own the adjacent dry land, in disregard of the principles applicable to special assessments and special taxation?   Undoubtedly, the allowing of ice and snow to remain upon a sidewalk may be declared a nuisance, but it must be a public nuisance, and one, too, not caused by the act of the adjacent property holder, but solely by the action of the elements. No one questions the right of the municipality to prevent such use of property and such action of the citizen as may be injurious to the public; but the adjacent lot owner has no ownership or control of the adjacent street, and this ordinance seeks to control the action of no one while on the street.   The lot owner is held responsible solely and simply for the accident of owning property near the nuisance.   He may have no more actual control of the street, or necessity to use it, than if his property were miles away; still, he is held responsible for a result he could not control, and to the production of which he did not even theoretically contribute. The *gist* of the whole argument is merely that it is convenient to hold him responsible.   It is not perceived why it would not be equally convenient to hold him responsible for the entire police government of so much of the street.

Counsel seem to wish to draw a distinction between the present case and the cases of *City of Chicago* v. *Larned*, and *City of Ottawa* v. *Spencer*, *supra*, upon the ground that it is

here neither sought to construct nor repair a sidewalk, but simply to keep it in a passable condition. But the difference is in the extent and not in the character of the burden sought to be imposed. The principle is precisely the same in each case. The object is to fit the streets, or so much as is occupied by sidewalks, for travel; and if the power to compel the private person to accomplish this result exists at all, it must extend to the necessary means in each case. It is impossible to point out why the removal of a snow bank should rest on a different principle from that applicable to filling a hole or nailing down a board.

We are satisfied with the entire correctness of the ruling in *Gridley* v. *City of Bloomington, supra,* and being so satisfied, the judgment below must be affirmed.

*Judgment affirmed.*

DICKEY, SHELDON and CRAIG, JJ., dissenting.