## McGUIRE *v.* THE DISTRICT OF COLUMBIA.*

CONSTITUTIONAL LAW; MUNICIPALITIES; SIDEWALKS, REMOVAL OF SNOW AND ICE FROM.

The act of Congress of February 10, 1904 (33 Stat. at L. 12, chap. 156), providing for the removal of snow and ice from the sidewalks of the District of Columbia, is unconstitutional and void as imposing unequal burdens upon, and discriminating between, citizens similarly situated· and equally entitled to bear the same burden. The prime requisite of such legislation is that it should be uniform and capable of universal enforcement.

No. 1415.   Submitted May 4, 1904.   Decided May 24, 1904.

IN ERROR to the Police Court of the District of Columbia.
*Reversed.*

---

*Constitutional Law—Class Legislation.*—As to the equal protection of persons, and the validity of legislation alleged to discriminate between them, see the following editorial notes presenting the authorities on their respective phases of the subject:  Constitutional equality of privileges, immunities, and protection, note to *Louisville Safety Vault & T. Co.* v. *Louisville & N. R. Co.* 14 L. R. A. 579; validity of class legislation, note to *State* v. *Loomis,* 21 L. R. A. 789; constitutionality of discrimination against women in police regulations, note to *Gastineau* v. *Com.* 49 L. R. A. 111; corporations as persons under 14th Amendment, notes to *Louisville Safety Vault & T. Co.* v. *Louisville & N. R. Co.* 14 L. R. A. 585,  and *State ex rel. Curtis* v. *Brown & S. Mfg. Co.* 17 L. R. A. 856; corporations as citizens under 14th Amendment, note to *Louisville Safety Vault & T. Co.* v. *Louisville & N. R. Co.* 14 L. R. A. 580.

The COURT in the opinion stated the case as follows:

It is understood that this is a test case to determine the question which has been raised as to the validity of an act of Congress entitled "An Act to Provide for the Removal of Snow and Ice from the Sidewalks of the District of Columbia, and for Other Purposes," approved February 10, 1904 (33 Stat. at L. 12, chap. 156), for the violation of which, consisting in the failure to remove snow and ice from the sidewalks in front of lots 62 and 63, in square 555, in this city, the appellant was adjudged to be guilty by the police court. The act in question is as follows:

"Be it enacted,   *   *   *   [etc.], That it shall be the duty of every tenant or occupant of any lot or lots of ground within the fire limits of the District of Columbia, improved by a house or building adjacent to any improved sidewalk, within the first four hours of daylight after the ceasing of any fall of snow, to cause said snow to be removed from the paved sidewalk adjacent to such lot or lots to the extent in length to which said lot or lots abut thereon and to the extent in breadth of not less than 6 feet, and, if such improved sidewalk be not of such width, then to the extent of the width thereof; and, in the event any snow that may have fallen shall, before its removal, become so hardened by freezing or otherwise that it cannot be removed without great difficulty, or if at any time ice shall have formed on any such improved sidewalk by the freezing of rain, hail, melted snow, or in any other manner, it shall be the duty of such tenant or occupant, within the first four hours of daylight thereafter, to sprinkle, or cause such snow or ice, to the extent aforesaid, to be sprinkled, with sand, sawdust, or other such substance. And for any violation of the provisions of this section such tenant or occupant shall be guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine of $5 and costs, or by imprisonment in the workhouse of the District of Columbia not exceeding five days, and by an additional fine of $5 and costs, or by additional imprisonment in the workhouse of the District of Columbia, not exceeding five days for each additional twenty-four hours after

the expiration of the time hereinbefore provided that such tenant or occupant shall suffer or permit such snow or ice to remain without being sprinkled or removed as hereinbefore provided.

"Sec. 2. That it shall be the duty of the commissioners of the District of Columbia, as soon as practicable after the ceasing of any fall of snow, or after the accumulation of ice, on the paved sidewalks of the District of Columbia in front of and adjacent to public buildings, public squares, and public reservations in the said District owned or leased by said District, to cause such snow or ice to be removed, and also to cause the same to be removed from all cross walks of improved streets and places of intersection of alleys with improved sidewalks; but, in the event of inability to remove such accumulation of snow or ice by reason of the hardening thereof, it shall be their duty, as soon as practicable, to cause such paved sidewalks, cross walks, and places of intersection of alleys with improved sidewalks to be sprinkled with sand, sawdust, or other such material.

"Sec. 3. That it shall be the duty of the owner or owners of every vacant or unimproved lot within the fire limits of the District of Columbia fronting or abutting upon a paved sidewalk, within the first four hours of daylight after the ceasing of any fall of snow, as set forth in § 1 hereof, to cause such snow to be removed from the paved sidewalk in front of such lot or lots in the same manner, and to the same extent, and subject to the same penalty, as provided in said section; and in the event any snow that may have fallen shall, before its removal, become so hardened by freezing or otherwise that it cannot be removed without great difficulty, or if at any time ice shall have formed on any such sidewalk by the freezing of rain, hail, melted snow, or in any other manner, it shall be the duty of such owner or owners, within the first four hours of daylight thereafter, to sprinkle, or cause such frozen snow or ice, to the extent aforesaid, to be sprinkled, with sand or sawdust, or other such substance; and for failure to do so such owner or owners shall be subject to the same penalty provided in § 1 of this act.

"Sec. 4. That in the event of the failure of any such owner or owners of any vacant or unimproved lot to cause the removal of

such snow or ice, or to sprinkle the same as hereinbefore provided, it shall be the duty of the commissioners of the District of Columbia, as soon as practicable after the expiration of the time herein provided for the removal or sprinkling thereof, to cause the snow or ice in front of such lot to be removed, or to cause the same to be sprinkled as hereinbefore directed to be done by such owner or owners; and upon each and every such removal or sprinkling by them they shall assess the sum of $1 against each such lot, and where any such lot has a frontage in excess of 25 feet an additional sum of $1 for each additional frontage of 25 feet or fractional part thereof; which said assessment shall be a lien on such lot when entered of record on the tax records of the District of Columbia, and to continue until paid, and shall be added to the general tax annually levied on such lot, and shall be collected in the same manner and as part of such general tax: Provided, however, that such removal or sprinkling by the commissioners of the District of Columbia, and assessment therefor, shall not relieve the owner or occupant from the penalty hereinbefore provided for failure to remove or sprinkle such snow or ice.

"Sec. 5. That it shall be the duty of every owner of any unimproved or nontenanted improved lot or lots, and of the tenant or occupant of any improved lot or lots of ground in the District of Columbia, within three days after notice to do so by the commissioners, to cause to be cleaned off and removed all dirt, sand, gravel, or other refuse matter that may fall, wash, or be placed upon any paved sidewalk adjacent to such lot or lots in the District of Columbia, subject to the same penalty provided in § 1 of this act.

"Sec. 6. That in the event of failure on the part of any owner, tenant, or occupant of any improved or unimproved lot or lots of ground in the District of Columbia to comply with the provisions of the preceding section of this act within five days after the notice hereinbefore provided, it shall be the duty of the commissioners of the District to cause the removal of such accumulation of dirt, sand, gravel, or other refuse matter; and upon any

and every such removal by them they shall make an assessment on account thereof at the same rates and under the same provisions named in § 4 of this act.

"Sec. 7. That, to enable the commissioners of the District of Columbia to comply with the provisions of §§ 4 and 6 of this act, the sum of $5,000 is hereby appropriated, one half out of the revenues of the District of Columbia and one half out of any money in the Treasury of the United States not otherwise appropriated: Provided, however, that all assessments collected under the provisions of this act shall be deposited in the Treasury of the United States to the credit of the appropriation herein made, and shall form a continuous fund for the purpose of complying with the provisions of said §§ 4 and 6.

"Sec. 8. That all prosecutions under this act shall be in the police court of the District of Columbia, in the name of said District, and by its attorney or one of his assistants.

"Sec. 9. That the act of Congress approved March 2d, 1897, entitled, 'An Act for the Removal of Snow and Ice from the Sidewalks, Cross Walks, and Gutters in the District of Columbia,' be, and the same is hereby, repealed."

*Mr. George E. Hamilton* and *Mr. M. J. Colbert* for the plaintiff in error.

*Mr. A. B. Duvall,* Corporation Counsel, and *Mr. E. H. Thomas* and *Mr. F. H. Stephens,* Assistants, for the defendant in error:

1. The law is a legal exercise of the police power; it does not create an illegal method of taxation, and it does not take private property for public use. *Com.* v. *Goddard,* Thacker, Cr. Cas. 420; *Clinton* v. *Welsh,* 166 Mass. 133; *Appeal of Goddard,* 16 Pick. 504; *Carthage* v. *Frederick,* 122 N. Y. 268; *Flynn* v. *Canton,* 40 Md. 312; *State* v. *Mahon* (Conn.) 55 Atl. 591; *Lincoln* v. *Janesch,* 63 Neb. 707. *Contra: Gridley* v. *Bloomington,* 88 Ill. 554; *Chicago* v. *O'Brien,* 111 Ill. 532; *New Hampshire* v. *Jackman,* 42 L. R. A. 438.

2. The police power is not subject to any definite limitations, but is coextensive with the necessities of the case and the safeguard of the public interests.   *Camfield* v. *United States,* 167 U. S. 518.

3. The law is plain that adjacent lot owners can be legally assessed for the construction and repair of sidewalks and curbing in front of their property.   *Willard* v. *Presbury,* 14 Wall. 676; *Bowman* v. *Ross,* 167 U. S. 548; *Wilson* v. *Lambert,* 168 U. S. 611.   It has been repeatedly held, also, that owners may be assessed for sprinkling and sweeping the streets and sidewalks.   *Reinken* v. *Fuehring,* 130 Ind. 382; *Beaumont* v. *Wilkesbarre,* 142 Pa. 198; *Washington* v. *Nashville,* 31 Tenn. 177; *Lumsden* v. *Cross,* 10 Wis. 282.   Owners may be required to build and repair sidewalks, and, on default, the work may be done by the city and the cost assessed to them.   *Bonsall* v. *Lebanon,* 19 Ohio, 418; *Paxson* v. *Sweet,* 6 Humph. 368; *Washington* v. *Nashville,* 31 Tenn. 177.

4. Laws requiring property owners to remove ice and snow from the sidewalks do not free the municipality from liability where any such existed.   15 Am. & Eng. Enc. Law, 448, note 3, and cases cited.   Nor do such laws render the owner liable for accidents caused by reason of his failure to observe the law.   15 Am. & Eng. Enc. Law, 451, note 5, and cases cited.

Mr. Justice MORRIS delivered the opinion of the Court:

This act, which subserves the purpose of a municipal ordinance for this District, was intended to take the place of the act of March 2, 1897, which the last section purports to repeal. The act of 1897 was before this court in the case of *Holtzman* v. *United States,* 14 App. D. C. 454, and we were then compelled to notice in some detail and to criticize the infirmities which in our opinion rendered that act a nullity in so far as it was applicable to the matters then under consideration.   The present act is no doubt the result of the animadversions then made upon the act of 1897, but the present act is, if possible, more objectionable than that which it is intended to supersede.

We find only one section in it, that which repeals the act of 1897, which does not in some way contravene the principles of common right and the fundamental law.

This is the third of a series of similar enactments passed within the last ten years, for, previous to the act of March 2, 1897, there was one approved on March 2, 1895 (28 Stat. at L. 809, chap. 178) the first four sections of which did not differ much from the four sections that compose the act of 1897, and the fifth section of which manifested the laudable purpose of the government of the United States to co-operate in the work by providing that the commissioners of public buildings and grounds should cause the snow and ice to be removed from the sidewalks of the city adjoining the public squares and the property of the United States, a provision absolutely essential to the successful operation of any such law, and which is presumed to be yet in force, although the remainder of that statute may have been superseded by the subsequent enactments.

The purpose of this legislation is in the highest degree humane and beneficent,—that of saving life and limb from untoward accident resulting from slippery sidewalks; and the co-operation of individual citizens is sought on the ground of convenience and of the great emergency of the case. On this aspect of the matter every intendment should be indulged in favor of the validity of such legislation.

But there is another aspect of these enactments which, in the interest of individual liberty and equal right before the law, can not be ignored. This class of legislation is undoubtedly an attempt on the part of the municipality to shift to the shoulders of individual citizens the burden which it is primarily incumbent on itself to bear, namely, that of keeping the streets and thoroughfares in proper condition for the purpose for which they are intended. That this duty is primarily upon the municipality cannot reasonably be questioned. That the municipality can efficiently perform the duty in the respect contemplated by the enactment before us, as well as in other respects, is not to be doubted. This very enactment itself provides that the municipality shall do the work required, at least in part, in the event

that individual citizens should fail to do it, and it is not apparent why, with proper organization, it should not do it in the first instance as well as in the last. When we view the matter in this light, and when we consider that this legislation has been solicited by the officers of the municipality from Congress for their own relief from the duty which otherwise it would be incumbent upon them to perform, we find no reason that should preclude a critical and careful examination of a statute that imposes a somewhat heavy burden, in some cases a practically impossible burden, upon the individual citizen whose rights are entitled to at least equal consideration with the rights of the municipality.

But it requires no very rigid or critical examination of the enactment to discover its gross inequalities and its palpable invasion of natural rights. Almost in the very first line we are confronted with an ambiguity that amounts almost to an absurdity. It is provided in the 1st section that "every tenant or occupant" of improved property within a certain specified district shall cause the snow and ice to be removed from the adjoining sidewalk under a prescribed penalty. When there are a dozen or more tenants or occupants of one improved piece of property, such, for example, as an apartment house, of which class of building we have now very many specimens in our city, are all the occupants of apartments therein liable for the performance of the prescribed duty, and punishable for failure to comply with the requirements of the act? And if not all are liable, is any one of them? An answer in the affirmative to either of these questions involves an absurdity; an answer in the negative leaves the statute without any provision whatever for the removal of snow and ice from the sidewalks in front of these apartment houses. For the owner is not by the statute required to do it, unless, perhaps, he happens, which would only be possible in rare cases, to be an occupant, also, of the premises; and certainly no employee about the premises would be a tenant or occupant in the eye of the law amenable to the performance of the duty required by the statute. In the case of improved property, not the owner, but the tenant or occupant, is required

to do the work or have it done; and this, of course, is eminently right and proper if the work is to be done at all by the individual citizen.

In the event that ice is formed upon the sidewalks, the owner or occupant of improved adjoining property is required by the enactment to cause the sidewalks to be sprinkled with sand, sawdust, or other such substance. What the *"other such substance"* is, or should be, we are left to conjecture to ascertain, and the citizen is left to conjecture to determine for himself, subject to the risk that, if he makes a mistake in his selection, he remains liable to the prescribed penalty.    Penal statutes cannot be based upon such looseness of language, although it may possibly be assumed that *"ashes"* are meant, as ashes have been very generally used for the purpose.    But this is perhaps an unimportant detail.    More important, apparently, is the inquiry as to how the individual citizen is to provide himself with such substances. There is no provision that the municipality shall furnish them to him.    Except in the case of ashes, and that may not always be an exception, the ordinary citizen is not usually provided with these substances, and it would often, perhaps generally, be impossible for him to procure them in the emergency in which they are most urgently needed.

Again, it is provided in the same connection that, if the tenant or occupant of improved property fails to remove the snow or ice, or to cause it to be sprinkled, as the case may be, he is liable to be committed to the workhouse for five days.    It is true there is the alternative of a fine; but he may elect not to pay a fine, or the court may elect, in its discretion,—for it has the discretion under the statute,—to impose the imprisonment, instead of the fine.    And, while so imprisoned, he remains liable to a similar penalty of fine or imprisonment for every additional period of twenty-four hours during which he permits the snow to lie or the ice to remain unsprinkled.    In other words, he has the right, and it is his duty under the statute, although he may have been delinquent in the first instance in causing the snow or ice to be removed within the first four hours of daylight, thereafter to repent at any time and to obey the mandate of the enactment, and

thereby to avoid the additional penalty; and yet he is prevented from so doing because he is in the workhouse under forcible detention at the time, and therefore absolutely prohibited from doing the work. This is one of the many incongruities of this remarkable statute.

The 2d section of the enactment makes it the duty of the commissioners of the District to cause the snow and ice to be removed from the paved sidewalks adjacent to the public buildings and public reservations owned or leased by the District of Columbia "as soon as practicable" after the ceasing of any fall of snow, or after the accumulation of any ice on such sidewalks. But it is not apparent why the individual citizen should be required to do the prescribed work within four hours and the commissioners should have their own time for the purpose. For there is no one to determine the practicable time but themselves, and assuredly the removal of snow and ice from the neighborhood of the public buildings and grounds of the District of Columbia is, if possible, more necessary and more imperative than from the neighborhood of private residences. Nor is there any penalty upon the commissioners for failure to comply with the law, and yet it cannot be admitted that they are above the law. There is no reason why, in this connection, the private citizen should be held to an accountability to which the officers of the District are not held, when the duty to be performed is equally mandatory on both, and the inequality is without justification.

The act is entirely destitute of any provision for the removal of snow and ice from the sidewalks adjoining improved property that happens to be vacant or untenanted at the time; and this class of property and its owners escape all liability under the act. This exemption or omission, whichever we call it, would be fatal to the act, even if there were no other defect; for the duty required to be performed is one which requires the most absolute uniformity with respect to all property within the so-called fire limits of the District adjoining the paved sidewalks. It is not to be tolerated that a burden should be imposed upon one piece of property, or upon the owner of it, when no such burden is imposed upon the adjacent property or the adjacent owner, not-

withstanding that the duty to be performed is precisely the same for both.    It is true that the owners of "vacant or unimproved lots" are required to have the snow and ice removed, equally with the tenants or occupants of improved property.    But the words "vacant or unimproved lot" do not include a vacant house. If they were held to do so, the term "lot" would mean two distinct and different things in the same connection.    Whether a lot is designated as vacant or as unimproved, it means to the common understanding that it has no house upon it.    And these words in the act are the only terms by which vacant or untenanted improved property can be comprised.

But probably the most glaring infirmity of this enactment is its sharp discrimination between the tenants and occupants of improved lots and the owners of vacant or unimproved lots. When it is remembered that the sole purpose to be subserved is the removal of snow and ice from the paved sidewalks of the District, and the duty of such removal is sought to be imposed upon individual citizens with reference to their occupation or ownership of adjoining property, the utmost equality and uniformity must be observed in the imposition of the duty.    It will not do to require one owner of property, by reason of his ownership, to perform a duty from which the owner of the adjoining property is relieved.    The owner of vacant property cannot be subjected to liability to which the owner of the adjoining improved property is not subjected, when the thing to be done is based exclusively on the propinquity of such property, and can have no possible reference to the condition of such property as improved or unimproved.    The necessity of the removal of snow and ice from the sidewalks is precisely the same in the one case as in the other.    To punish the one owner, for failure of compliance with the act, by fine and imprisonment and an assessment upon his property, and to exempt the other from all duty and from all liability for the same precise thing, is a species of inequality which is repugnant to the principles of natural justice; and the inequality is not obviated by the fact that the duty, which might otherwise be imposed upon the owner of improved property, is by the enactment shifted to the tenant or occupant.    The fact re-

mains that the owner of unimproved property is charged with a burden, by reason solely and exclusively of his ownership, with which the owner of adjacent improved property is not charged, notwithstanding that the burden has no relation whatever to the character of the property, whether improved or unimproved. For we are not to be understood as holding that there may not be difference of burden where the difference has a reasonable relation to the difference of character of the property.

It is to be noticed that, if the tenant or occupant of improved property fails to remove the snow and ice in front of his property, there is no provision in the act for the performance of the work by the commissioners of the District. Their duty of removal in this connection extends only to the sidewalks in front of unimproved or vacant lots. Here, again, is gross inequality as well as utter failure to subserve the purpose of the law,—for the intervention of the commissioners is as necessary in the one case as in the other.

In excuse of the inequality here apparent, it is alleged that the owners of vacant lots are often nonresidents, and, when such, cannot be reached by the process of fine and imprisonment. But this plainly is no sufficient excuse; for either the assessment authorized to be made for the failure to remove the ice and snow, and the performance of that duty by the commissioners, is a charge under the power to assess property for benefits or it is an exercise of the police power of the State or municipality. The former will scarcely be contended, and, if it were contended, it would lack the necessary element of uniformity. The charge must be sustained, if at all, under the police power; but here, again, the element of uniformity is equally requisite, and is equally wanting in the enactment. We cannot have one law for the resident and another for the nonresident owner of real estate in this District. Probably only a comparatively small minority of the owners of vacant lots in this District are nonresidents, and we fail to see why the fact of the nonresidence of some owners of vacant lots should cause an inequality between all owners of vacant lots and the owners of improved property in the matter of a duty equally incumbent upon

both, and incumbent on them, if at all, solely by reason of their adjacent ownership, wholly disconnected from the matter of improvement or absence of improvement of the property.

There are other difficulties connected with the enforcement of this act which may be mentioned without our entering into any extended consideration of them. Property may be owned or occupied by minor children, acquired, perhaps, by inheritance, and it might be impossible for them to perform the required duty. It might be held by trustees or receivers, upon whom no such duty could properly be imposed. It might be in litigation, or a tenant or occupant might be ill or temporarily absent from the District, or the ownership might be of vacant lots in widely distant parts of the District, which it might be impossible to reach within the time limited for the performance of the prescribed duty. Numerous cases might be supposed in which such performance would be simply an impossibility. And it will not do to say that these are exceptional cases, for the enactment is one which is worthless if it is not capable of universal enforcement. Of what advantage is it to the passenger on the sidewalk that he has passed safely in front of the premises of one man who has faithfully complied with the requirements of this act, if he falls and is injured on the slippery sidewalk adjacent to the neighboring property of one who has disregarded the enactment? Of what avail is it to remove the snow and ice in front of some premises, if other portions of the sidewalks, perhaps used to a greater extent, are to be left in a dangerous condition, which even the commissioners are not authorized by this enactment to remedy? The primary requisite of all such legislation is that it should be uniform, and that it should be capable of universal enforcement.

We have no desire to ignore the fact, that, in several of the States of our Union, notably in Massachusetts and New York, there have been adjudications sustaining the validity of legislation having in view the same general purpose as has the enactment now under consideration. *Goddard, Petitioner,* 16 Pick. 504, 28 Am. Dec. 259; *Carthage* v. *Frederick,* 122 N. Y. 268, 10 L. R. A. 178, 19 Am. St. Rep. 490, 25 N. E. 480. At the

same time, in view of modern methods and altered municipal conditions, we are disposed to attach at least equal importance to those adjudications which, like *State* v. *Jackman,* 69 N. H. 331, 42 L. R. A. 438, 41 Atl. 347; *Gridley* v. *Bloomington,* 88 Ill. 554, 30 Am. Rep. 566; *Chicago* v. *O'Brien,* 111 Ill. 532, 53 Am. Rep. 640, hold that, under the guise of the exercise of the police power, it is not competent either for the legislature or for the municipality to impose unequal burdens upon individual citizens. Upon careful examination of the cases of *Goddard, Petitioner,* 16 Pick. 504, 28 Am. Dec. 259; *Carthage* v. *Frederick,* 122 N. Y. 268, 10 L. R. A. 178, 19 Am. St. Rep. 490, 25 N. E. 480; and the other authorities on that side of the question, —it will be found that there was no element of inequality found to exist in any of the enactments under consideration, but that only the question was considered whether the authority of the State or municipality extended to the promulgation of such ordinances. There was no such glaring inequality and unjust discrimination between citizens similarly situated and equally entitled to bear the same burden as is to be found in the enactment now before us. It is for this inequality and for this discrimination that we are constrained to hold the enactment to be a nullity. Equality before the law is a fundamental principle of our republican institutions. It is a principle as dear to us even as life or liberty; and any enactment that contravenes it cannot have the force of law.

We are of opinion that the act is void, and that, therefore, the judgment of the police court based upon it is erroneous. The judgment will be reversed, with costs.

The cause will be remanded to the Police Court of the District, with directions to vacate its judgment, and to discharge the defendant. And it is so ordered.

*Reversed.*