STATE, PATRICK EGAN, Complainant, *vs.* J. WILSON McCRILLIS.

FEBRUARY 1, 1907.

PRESENT: Douglas, C. J. Dubois, Blodgett, Johnson, and Parkhurst, JJ.

(1) *Municipal Corporations.    Police Regulations.    Removal of Snow.*

Cap. 20, § 33, of the ordinances of the city of Providence, requiring owners and occupants of real estate to remove snow and ice from the sidewalks adjacent to such real estate under a penalty, is within the authority of the city council to ordain under clause one section nine of its charter.

(2) *Constitutional Law.    Unequal Taxation.*

Cap. 20, § 33, of the ordinances of the city of Providence, requiring owners and occupants of real estate to remove snow and ice from the sidewalks adjacent to such real estate under a penalty, is not obnoxious to the provisions of the constitution of the State, article I, section 2, providing that "the burdens of the State ought to be fairly distributed among its citizens," or to article I, sec. 16, providing that "private property shall not be taken for public uses without just compensation."

The constitution of Rhode Island nowhere limits the taxing power of the State by any specific provision that taxation shall be uniform and equal.

While the ordinance indirectly operates as a law creating a burden, it is to be regarded rather as a police regulation, imposed upon the citizens because they are so situated as that they can most promptly and conveniently perform it, and laid equally upon all within the description composing the class.

While the duties and limitations attached to the ownership of land may be changed from time to time by the legislature, they are not of necessity void because they apply to land owners only; and so, while every citizen is under obligation to render some unpaid service to the State, it can not be contended that such legislation is confiscation simply because there is no provision for payment for such services, nor that it makes unequal discrimination because different burdens are imposed upon persons owning different kinds of property.

(3) *Constitutional Law.    Regulation of Taxation.*

Neither is it obnoxious to the provisions of the fourteenth amendment to the constitution of the United States, which imposes no restraint upon the States respecting their systems of taxation.

CRIMINAL COMPLAINT certified from Superior Court for opinion.

BLODGETT, J. The questions raised by the appellant in his reasons of appeal from a conviction in the Police Court of the City of Providence for a violation of section 33 of Chapter 20 of the ordinances of that city have been considered of such doubt and importance that they have been certified by the Superior Court to this court for its opinion thereon.

The ordinance in question is as follows:

"SEC. 33. The owner or owners, occupant or occupants, or any person having the care of any building or lot of land bordering on any street, square, or public place within the city, shall within the first four hours of daylight, after the ceasing to fall of any snow, cause the snow to be removed from the sidewalk adjoining said building or lot of land, and each and every hour after the expiration of said four hours that the snow shall remain on said sidewalk shall be deemed to be a separate violation of this section. The provisions of this section shall also apply to the falling of snow from any building."

The questions certified by the court are:

"1. Whether an ordinance of the City of Providence, to wit, Section 33 of Chapter XX of the ordinances of the City Council of said City requiring owners and occupants of real estate to remove snow and ice from the sidewalks adjacent to such real estate under a penalty, was illegal and void because said City of Providence at the time of the passing of said ordinance had no power or authority under the laws of the State of Rhode Island to pass such an ordinance.

"2. Whether said ordinance is contrary to Article 1, Section 2 of the constitution of the State of Rhode Island which declares that 'Laws, therefore, shall be made for the good of the whole and the burdens of the state ought to be fairly distributed among its citizens.'

"3. Whether said ordinance is contrary to Article 1, Section 16 of the Constitution of the State of Rhode Island which declares that 'Private property shall not be taken for public uses without just compensation.'

"4.    Whether said ordinance is contrary to the Fourteenth Amendment of the Constitution of the United States which declares that 'No State shall deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws.'"

(1)    It is clear that the city council had abundant authority to provide by ordinance for the clearing of the sidewalks in said city, as appears by clause 1 of section IX of its charter, viz.: "The City Council of said city shall have power to make laws, ordinances and regulations for the government of said city relative to  .  .  .  .  the streets, sidewalks and highways of said city, and to the ordering of the same to be made and to mending, paving, cleaning and lighting the same." See also section IX, clause 2, and section 1, clause 1.    It follows that this contention can not avail the appellant.

(2)    It is next objected that this ordinance is repugnant to the provisions of article 1, section 2, of the constitution of this State as well as of article 1, section 16 thereof, which are as follows:

"SEC. 2.    All free governments are instituted for the protection, safety, and happiness of the people.    All laws, therefore, should be made for the good of the whole; and the burdens of the State ought to be fairly distributed among its citizens."

"SEC. 16.    Private property shall not be taken for public uses, without just compensation."

The questions here raised are presented to this court for the first time, although similar questions have been raised frequently, in other jurisdictions, and the decisions thereon are not uniform.

Counsel for the appellant contends that the ordinance is invalid, and relies upon the cases of *Gridley* v. *Bloomington,* 88 Ill. 554 (1878), affirmed by a divided court (three justices dissenting) in *Chicago* v. *O'Brien,* 111 Ill. 532, decided in 1884, and upon the case of *State* v. *Jackman,* 69 N. H. 318 (1898), and the decision of the Court of Appeals of the District of Columbia in *McGuire* v. *District of Columbia,* 24 App. Cas. D. C. 22 (1904), in support of his contention.

The reasoning by which this conclusion is reached may be thus briefly summarized.

The State imposes upon the municipalities the duty of constructing highways and of maintaining them in a safe condition for travel under a penalty for failure so to do, and also imposes a civil liability for damages for accident arising by reason of such neglect. This is a public improvement and is also a public duty for which taxes are properly levied upon a taxing district which may, indeed, include the whole municipality or which may be limited to include only those whose property is specially benefited; but in either case the tax must be assessed upon the principles of uniformity and of equality. The sidewalks in a city are undoubtedly part of the highway and the general duty of removing or rendering harmless the accumulations of snow and ice thereon constitutes a repair of a public highway and a public improvement as to which the same rules of equality and uniformity must be observed when a tax is to be levied therefor. Consequently a requirement that each abutter shall be required to remove the snow and ice from the sidewalk in front of his premises, whatever their extent, and irrespective of their value, is a violation of this rule of uniformity and equality, inasmuch as it imposes a burden and creates a duty which does not bear on all citizens alike; nor equally upon all abutters, inasmuch as it is a uniformity of system only and not a uniformity of result.

The argument would seem to rest upon the postulate that "taxation must be uniform and equal," and this is doubtless true when it is so expressed in the constitution, but it is not a fundamental maxim of government, limiting the legislature unless it is so expressed therein.

In *Chicago* v. *O'Brien, supra,* cited by the appellant, it was said (p. 535) that: "In *City of Chicago* v. *Larned,* 34 Ill. 203, a case very elaborately argued by able counsel—the principle involved in the decisions of these cases was carefully considered, and it was held they could not apply here—that they were decided under constitutions so materially different from ours, that the same line of reasoning is not applicable to both." This statement is the more clearly apparent upon referring to

the decision in *Chicago* v. *Larned*, where it appears by the opinion (p. 268) that section 5 of article 9 of the constitution of Illinois contained a provision requiring "such taxes to be uniform in respect to persons and property within the jurisdiction of the body imposing the same," the court adding (p. 275): "The framers of our Constitution have taken unexampled pains by these separate sections to affirm the principles of 'equality' and 'uniformity' as indispensable to all legal taxation whether general or local. Section five (*supra*) is believed to be peculiar to our Constitution and manifests the great anxiety of its framers to place every possible species of taxation upon the only equitable basis conceivable and is believed to be more stringent than any provision in any other State Constitution on the same subject." It is obvious, accordingly, that the decision in *Chicago* v. *O'Brien* was rendered in accordance with special requirements of the constitution of Illinois.

A similar consideration seems to have controlled the decision in *State* v. *Jackman*, 69 N. H. 318, in which the court refers with approval (p. 329) to the decision in *State* v. *Express Co.*, 60 N. H. 219, in which latter case the court said (p. 237): "But this general principle of equality, which, independent of any constitutional provision, underlies and forms the basis of all taxation, is enforced here by the provision of the constitution that requires that 'all assessments, rates, and taxes shall be proportional and reasonable.' It is not left to the discretion of the general court to determine what is equal and reasonable, and to impose such as they may consider equal, but any other than equal and reasonable taxes, rates, and assessments are prohibited; and the equality intended is, 'that the same tax shall be levied on the same amount of property in every part of the state, so that each man's taxable property shall bear its due proportion of the tax according to its value.' 4 N. H. 568."

The remaining case cited by the appellant is *McGuire* v. *District of Columbia*, 24 App. Cas. D. C. 22, in which an act of Congress passed in 1904 and applicable to the District of Columbia, because of certain inequalities and exceptions

therein, was thus characterized by the court: "We find only one section in it, that which repeals the act of 1897, which does not in some way contravene the principles of common right and the fundamental law;" the court continuing (page 31): "The act is entirely destitute of any provision for the removal of snow and ice from the sidewalks of adjoining improved property that happens to be vacant or untenanted at the time; and this class of property and its owners escape all liability under the act. This exemption or omission, whichever we call it, would be fatal to the act, even if there were no other defect; for the duty required to be performed is one which requires the most absolute uniformity with respect to all property within the so-called fire limits of the District adjoining the paved sidewalks;" and page 32: "But probably the most glaring infirmity of this enactment is its sharp discrimination between the tenants and occupants of improved lots and the owners of vacant or unimproved lots. . . . To punish the one owner, for failure of compliance with the act, by fine and imprisonment and an assessment upon his property, and to exempt the other from all duty and from all liability for the same precise thing, is a species of inequality which is repugnant to the principles of natural justice." And it appears the decision is clearly based upon the inequalities and discriminations appearing in the act as is evidenced by the statement (p. 35): "It is for this inequality and for this discrimination that we are constrained to hold the enactment to be a nullity."

The grounds for the foregoing decisions have thus been set forth at some length in order that the reasoning in all the cases cited by the appellant, and all that we have found, after an extended examination, might be clearly set forth in order to an examination of their relevancy to the case at bar. Clearly they do not apply to the case at bar unless similar inequalities and discriminations appear in the ordinance in question, or unless the constitution of Rhode Island contains restrictions similar to the constitutions of Illinois and New Hampshire.

We find no such obnoxious discriminations in the ordinance of the city of Providence, and proceed to a consideration of

those provisions of the constitution of this State which are said to be controlling in this respect.

In *Cleveland* v. *Tripp,* 13 R. I. 50, 62, Durfee, C. J., said: "But our constitution is extremely latitudinarian. It contains no restriction except what is implied in the declaration that 'the burdens of the State ought to be fairly distributed;' and this declaration, as was said *In the Matter of Dorrance Street,* 4 R. I. 230, 249, expresses no more than would be implied without it, 'from the fact of our free institutions and the general principles of constitutional law.'" And in *Crafts* v. *Ray,* 22 R. I. 179, 183, this court said, of the same provision: "The form of this clause is advisory; not mandatory," and that it was "addressed rather to the General Assembly, by way of advice and direction, than to the courts, by way of enforcing restraint upon the law making power. . . . . The form is 'ought to be,' the word is *fairly* distributed, not 'equally' even,—unless equality be fair, which is not always in any sense, and never in some senses. . . . . Had the constitution been wholly silent upon this subject, a greater latitude could not have been given by these principles than seems to have been studiedly implied in the form, spirit, and general terms of the sentence."

Hence it is evident that the expressed provisions of the constitution of this State can not avail the appellant here.

It is obvious that there is no specific provision that taxation shall be uniform and equal, expressed in the constitution of this State, and it is equally obvious that it is not our province to determine what ought to be there, but is not there.

As was said in *State* v. *Travelers Ins. Co.,* 73 Conn. 255 (1900), 262: "Is this maxim necessarily implied from any provisions of our fundamental law? Unless the vague notion of a higher law is claimed as a constitutional provision, we are pointed to no provision, nor to any combination of provisions, from which it is claimed that such a maxim is a necessary implication. To controvert a claim which rests on no definite proposition is ordinarily like fighting the air. But fortunately in this case the task of proving a negative is not difficult. The provisions of our constitution exclude the possibility of a

limitation of legislative power by any implied mandate that taxation shall be equal and uniform."

The reasoning in the cases cited by the appellant, as also his contention set forth in his brief and at the argument, alike proceed upon the assumption and the theory that the legislation in question is in substance and effect the imposition of a tax. Thus in *State* v. *Jackman, supra,* the court says (p. 329) : "True, the ordinance is not strictly a law levying a tax, the direct or principal object of which is the raising of revenue (*Goddard, Petitioner,* 16 Pick. 504): but it is such a law practically, both in substance and in effect, and should fairly be so regarded. The amount of expense from which the city is relieved by the operation of the ordinance is equivalent to so much revenue derived from taxation; the additional burden to which the lot owners are subjected is none the less a tax because it is exacted in labor and not in money" (citing authorities); "and the fine imposed for its non-performance is as useful to the city as a tax of equal amount."

The correct view, however, seems to us to be expressed in *Goddard, Petitioner, supra,* cited in *State* v. *Jackman, supra.* There Shaw, C. J., says (p. 319): "It is not speaking strictly to characterize this city ordinance as a law levying a tax, the direct or principal object of which is the raising of revenue. It imposes a duty upon a large class of persons, the performance of which requires some labor and expense, and therefore indirectly operates as a law creating a burden. But we think it is rather to be regarded as a police regulation, requiring a duty to be performed, highly salutary and advantageous to the citizens of a populous and closely built city, and which is imposed upon them because they are so situated as that they can most promptly and conveniently perform it, and it is laid, not upon a few, but upon a numerous class, all those who are so situated, and equally upon all who are within the description composing the class." Nor are decisions wanting in other States in which similar legislation has been sustained as valid. *Carthage* v. *Frederick,* 122 N. Y. 268; *Reinken* v. *Fuehring,* 130 Ind. 382; *City of Helena* v. *Kent,* 32 Mont. 279; *State* v. *McMahon,* 76 Conn. 97; *City of Lincoln* v. *Janesch,* 63 Neb.

707; *Flynn* v. *Canton Co. of Baltimore*, 40 Md. 312; *Taylor* v. *Lake Shore & Mich. S. Ry.*, 45 Mich. 74.

It would serve no useful purpose to further multiply citations from these authorities. Suffice it to say that the reasoning in support of them may be summarized as based upon the following just and sound principles.

As all property is held and enjoyed subject to the police power of the State, so all law-making power is vested in the legislature subject to the limitations contained in the constitution. Governments are instituted and laws are enacted, in large measure, in order that the respective rights and duties of citizens to each other and to the State may be determined and enjoyed, and these duties, within proper limitations, may be determined and changed from time to time by the legislature, according to the status or occupation or temporary relation of the citizen, without being obnoxious to the charge of arbitrary partiality or of unfair discrimination.

For example, the ordinary duty which a bailee owes to his bailor is increased when the bailee is a common carrier, as the liability of a principal for the acts of his agent is also enlarged when the two stand in the relation of master and servant. And as it is true that the legislature may enlarge or diminish the duties which it imposes upon men engaged in certain employments or engaged in certain occupations, so it may create, enlarge, or diminish the duties which accompany the ownership and use of land; and legislation is not necessarily invalid because it affects such persons only.

These observations are true also of the duties and limitations which are attached to the ownership of land. These may indeed be changed from time to time by the legislature, but they are not of necessity void because they apply to landowners only. Obviously, an act which apparently seeks to accomplish such a purpose, but nevertheless in fact and in effect works a confiscation of property or is an arbitrary and partial discrimination between persons who are equal before the law, is invalid.

From the fact of his citizenship every citizen is under obligation to render some unpaid service to the State which protects

him, reasonable, of course, in view of the exigencies which require such a service from him; and a law which simply defines and enforces such an obligation is entirely within the scope of the legislative power. The wisdom and the expediency of such a requirement are, commonly speaking, legislative questions while the function of the judiciary is rather to determine whether such an act in fact and in effect violates the constitutional limitations imposed upon the law-making power. But it can not be successfully contended that such legislation is confiscation simply because there is no provision for payment for the services rendered, nor that it makes unequal and arbitrary discriminations because different burdens are imposed upon persons differently employed or owning different kinds of property.

The creation of a municipal corporation, such as the city of Providence, confers special corporate powers and privileges for the common welfare, and it of necessity involves the imposition of special limitations upon the individual in the use of his property, as well as in his action or in his employment, and these limitations are the foundation of rights which the same individual owes to his fellows and to the corporate community of which they are alike members.

This is specially true of the highways of a municipality. It is true that they serve as means of public travel for all; nevertheless that travel is largely, if not mainly, incident to the use and the enjoyment of the land upon which they abut. Were it not for the highways of the city, small indeed, in comparison with their present value, would be the value of city lots to which no access could be had. And so it may be said, in a large way, that those who own and those who occupy the land within the limits of the city are collectively the inhabitants of the city. So that the relation of the land in a city to the plexus of streets by which the land is surrounded and entered, and which so greatly increases its value and its use, is a peculiar and special relation. It is not to be questioned that sidewalks are a part of the highway, and it is of common knowledge that they are commonly laid within the lines of the street. And indeed they sustain a relation which is even

closer and more immediate to the adjoining land and buildings, and hence are properly made the subject of special authority and may be made the subject of special regulations. It is obvious that a city of very small area may have several hundred miles of sidewalks, and it is of the greatest importance to the public safety that these entrances to the land should be kept safe, as, indeed, such safety of access increases the value of all the land which they adjoin. It was conclusively shown at the argument that a purely corporate oversight of all these sidewalks could not adequately meet all the emergencies which in this latitude the action of the elements often creates, and it was shown with equal clearness that the inhabitants, being, as already stated, practically those who are the owners and the occupiers of the land, are alone so situated as to be enabled to render those services which are essential alike to the public welfare as well as promote their individual interests, and we see no constitutional objection to the validity of such legislation.

As said in *State* v. *McMahon*, 76 Conn. 97–106:

"To say that it is possible for the legislature, under cover of a law purporting to be of this kind, to accomplish actual confiscation of property, or the subjection of citizens to partial and arbitrary discriminations, is to state a proposition which may be sound but is not relevant to the facts of this case. To say that a law defining the duties of citizens in serving the State is necessarily a violation of the constitutional guaranties against the confiscation of property and partial and arbitrary discriminations, because the service is unpaid, or is one that all citizens are not in a situation to render, is to state a proposition which is radically unsound. Such a theory of selfish immunity from all duties inherent in citizenship is supported by no principle of political ethics, and cannot safely be reduced to practice under any government."

(3)     There remains the final objection urged by the appellant, that this legislation violates the provisions of the fourteenth amendment to the constitution of the United States. The contention apparently proceeds upon the assumption that the

legislation in question is of the nature of a tax and is objectionable because of the inequality of burden imposed thereby. Even so, the contention can not avail the appellant. Says Mr. Justice Miller in *Davidson* v. *New Orleans*, 96 U. S. 97, 105, in speaking of unequal taxation, "the Federal Constitution imposes no restraint upon the states in that regard." And it is stated by Mr. Justice Brewer in *Merchants' Bank* v. *Pennsylvania*, 167 U. S. 461, 464: "Indeed, this whole argument of a right under the Federal Constitution to challenge a tax law on the ground of inequality in the burdens resulting from the operation of the law is put at rest by the decision in *Bell's Gap Railroad* v. *Pennsylvania*, 134 U. S. 232, 237, in which case Mr. Justice Bradley, speaking for the court, said:

"'The provision in the Fourteenth Amendment, that no State shall deny to any person within its jurisdiction the equal protection of the laws, was not intended to prevent a State from adjusting its system of taxation in all proper and reasonable ways. It may, if it chooses, exempt certain classes of property from any taxation at all, such as churches, libraries, and the property of charitable institutions. It may impose different specific taxes upon different trades and professions, and may vary the rates of excise upon various products; it may tax real estate and personal property in a different manner; it may tax visible property only, and not tax securities for payment of money; it may allow deductions for indebtedness, or not allow them. . . . We think that we are safe in saying, that the Fourteenth Amendment was not intended to compel the State to adopt an iron rule of equal taxation. If that were its proper construction, it would not only supersede all those constitutional provisions and laws of some of the States, whose object is to secure equality of taxation, and which are usually accompanied with qualifications deemed material; but it would render nugatory those discriminations which the best interests of society require; which are necessary for the encouragement of needed and useful industries, and the discouragement of intemperance and vice; and which every State, in one form or another, deems it expedient to adopt.'

See also *Jennings* v. *Coal Ridge Improvement Co.*, 147 U. S. 147."

We are of the opinion, therefore, that the ordinance in question is an ordinance which the city council of Providence was authorized to enact, and that it does not violate the provisions of the constitution of this State or of the constitution of the United States. And so holding, our order is that the papers in the cause be sent back to the Superior Court, with our decision, for further proceedings in accordance therewith.

*Albert A. Baker and Henry C. Cram*, for complainant.
*Littlefield and Barrows*, for defendant.