[No. 11431.   Department Two.   February 6, 1914.]

NORTHERN PACIFIC RAILWAY COMPANY, *Appellant*, v.
ADAMS COUNTY, *Respondent*.[1]

AGRICULTURE—NOXIOUS WEEDS — COST—ASSESSMENT — REMEDIES.
Construing together all of the provisions of the act relating to cutting noxious weeds (Rem. & Bal. Code, § 3032 *et seq.*), the act contemplates that the cost of cutting weeds to the center of the highway shall be taxed to the abutting land, and § 3039, providing that failure to cut weeds on the highway shall constitute a misdemeanor merely furnishes a cumulative remedy.

CONSTITUTIONAL LAW — NOXIOUS WEEDS—COST — ASSESSMENT ON
LAND—TAKING PROPERTY WITHOUT COMPENSATION—DUE PROCESS OF
LAW.  Rem. & Bal. Code, § 3032 *et seq.*, providing that the owners of abutting lands shall cut noxious weeds in the road to the center of the highway, and on default, the work shall be done by the county and the cost assessed as a tax upon the land, is valid as a reasonable exercise of the police power; and is not a taking of private property without just compensation or without due process of law.

Appeal from a judgment of the superior court for Adams county, Holcomb, J., entered June 23, 1913, dismissing an action to restrain the collection of a tax for destroying noxious weeds, upon sustaining a demurrer to the complaint. Affirmed.

*Geo. T. Reid, J. W. Quick*, and *L. B. da Ponte*, for appellant.

*W. O. Miller*, for respondent.

MOUNT, J.—The lower court sustained a demurrer to the complaint in this action.   The plaintiff elected to stand on the allegations of the complaint, and the action was dismissed.   The plaintiff appeals.

The complaint alleges, in substance, that the plaintiff owns and operates a line of railroad in the state of Washington, extending through Adams and other counties, and occupies therewith a right of way generally of the width of

[1]Reported in 138 Pac. 307.

two hundred feet.   In the year 1912 the defendant, acting through its road supervisor, gave due notice to the plaintiff to cut down and destroy certain noxious weeds growing on one of the public highways in the defendant county parallel to and abutting upon that part of the plaintiff's right of way over and across the northeast quarter and the northwest quarter of section 13, township 19 north, of range 35 east, W. M.; that the plaintiff having failed and refused to destroy said noxious weeds within ten days, the road supervisor procured the necessary assistance and destroyed the noxious weeds, and thereby incurred the necessary and reasonable expense of $20.80, and has mailed a statement thereof, including a description of the land, to the plaintiff, requiring it to pay the same within thirty days.   The plaintiff having refused to pay such sum, the claim was presented by the proper officer to the county commissioners, and the same was examined, found correct, allowed, and Adams county paid to the road supervisor the sum claimed, and made an order that such sum should be taxed against the plaintiff's right of way. The county treasurer thereupon entered such sum on the tax rolls of Adams county as a tax for the year 1912 against the right of way, which sum, together with penalties, interest, and costs, now stands as a tax on the rolls of Adams county for the year 1912 against the plaintiff's right of way.   That the defendant now claims and pretends that this sum is justly due and owing, that it is a valid lien and tax against the plaintiff's right of way, and it will, unless restrained, endeavor to collect the same by process of law, as prescribed by the general laws of Washington relating to the collection of delinquent taxes.

It is also alleged that Rem. & Bal. Code, § 3032 *et seq.* (P. C. 9 § 51), as amended by ch. 60, Laws of 1911, p. 327, particularly §§ 3039 and 3040 as so amended, in so far as the same undertake to and do impose a duty upon a land owner to cut noxious weeds growing upon public highways in the state, and in so far as they undertake to make the cost

of cutting the same a lien upon lands bordering upon highways, and in so far as they authorize the levy of a tax upon lands bordering on such highways for the cost of cutting weeds thereon and the sale of such lands for and on account of the cost of cutting such weeds so incurred, are in violation of article 1, § 3 and article 7, § 2 of the constitution of the state of Washington, and are in violation of the 14th amendment to the constitution of the United States, and are null and void.

The complaint also alleges that the plaintiff has paid all taxes justly due, including all charges for cutting weeds upon its own land or right of way. The prayer is that the illegal tax be cancelled and removed as a cloud on the plaintiff's title to its right of way, and that the defendant be enjoined from attempting to collect the same.

The appellant first contends that, while §§ 3038, 3040 and 3041 seem to contemplate that the cost of cutting weeds to the center of abutting highways shall be taxed to the abutting land, § 3042, which deals specifically with the matter of assessing the cost, does not so provide; that it merely provides that the county commissioners shall make an order that the amount paid shall be "a tax on the land on which said work was done;" and that § 3039, which provides that the failure to cut noxious weeds on any road or highway to the center thereof, shall constitute a misdemeanor, is the only remedy in cases of this kind. But we think the whole chapter should be construed together, and when so construed, indicates quite clearly that it was the intention of the legislature that the money so paid should be a lien upon the land abutting upon the highway, and that the criminal statute is merely a cumulative remedy.

The principal contention of the appellant is that the statutes above referred to are violative of the constitutional sections above mentioned, for the reason that compelling property owners to cut noxious weeds to the center of the highway is a taking of private property for a public use with-

out compensation; and also is a taking of property without due process, contrary to the Federal constitution.

It is conceded by the appellant that the statutes referred to, in so far as they impose a duty upon the citizen to keep his own premises clear of noxious weeds, is a valid statute. This court has so held in *Wedemeyer v. Crouch*, 68 Wash. 14, 122 Pac. 366, 43 L. R. A. (N. S.) 1090; See, also, *Los Angeles County v. Spencer*, 126 Cal. 670, 59 Pac. 202, 77 Am. St. 217; *Missouri K. & T. R. Co. v. May*, 194 U. S. 267.

So far as we are advised, no state, except this one, has gone to the extent of providing that the owner of land abutting upon a public highway must cut noxious weeds to the center thereof. Other states have only gone to the extent of requiring the owner of land to cut noxious weeds upon his own premises. But this state has required that such owner shall cut noxious weeds to the center of the highway.

We said in *Wedemeyer v. Crouch*, *supra*, that these statutes are "a strictly police regulation." And it seems to us there can be no doubt upon this question. Requiring the destruction of noxious weeds is a provision for the general welfare of the community, and must rest for validity upon the principle of police regulation. The validity of these statutes, which were considered in *Wedemeyer v. Crouch*, *supra*, was based upon the maxim that, "one must not so use his own as to injure his neighbor."

While no cases directly in point have been called to our attention, we think the same principle must govern this case as controls those cases where property owners have been required to remove snow and ice from sidewalks in front of their premises. If the legislature of the state may authorize a municipal corporation, by ordinance, to require property owners to remove snow and ice from sidewalks in front of their property, then it seems clear that, upon the same principle, the legislature may require property owners within the state to cut noxious weeds to the center of highways in

front of their property. We see no reasonable distinction between these classes of cases. While the courts of various states are in conflict on the question of the validity of city ordinances requiring owners or occupants of property to remove snow and ice from sidewalks abutting thereon, we are of the opinion that the better rule is as declared by those states which hold to the rule that such ordinances are a valid police regulation. This rule has been followed in Connecticut in *State v. McMahon,* 76 Conn. 97, 55 Atl. 591; in Massachusetts in *Goddard, Petitioner, etc.,* 16 Pick. 504, 28 Am. Dec. 259, and in *Clinton v. Welch,* 166 Mass. 133, 43 N. E. 1116; in New York in *Village of Carthage v. Frederick,* 122 N. Y. 268, 25 N. E. 480, 19 Am. St. 490, 1 L. R. A. 178; affirming 44 Hun 625; in Montana in *Helena v. Kent,* 32 Mont. 279, 80 Pac. 258, and in Rhode Island in *State v. McCrillis,* 28 R. I. 165, 66 Atl. 301, 9 L. R. A. (N. S.) 635, 13 Am. & Eng. Ann. Cas. 701. The opposite has been held in Illinois in *Chicago v. O'Brien,* 111 Ill. 532, 53 Am. Rep. 640; in New Hampshire in *State v. Jackman,* 69 N. H. 318, 41 Atl. 347, 42 L. R. A. 438, and in the District of Columbia in *McGuire v. District of Columbia,* 24 App. D. C. 22. An interesting note to the Montana case will be found in 4 Am. & Eng. Ann. Cas. at p. 238.

In *State v. McCrillis, supra,* the authorities both for and against the constitutionality of statutes of this kind are collected and reviewed and the court concludes, we think rightly, that measures of this kind are regarded as a police regulation and are not, strictly speaking, laws levying a tax, the direct or principal object of which is to raise revenue, but impose a duty upon a large class of persons directly to their benefit and are regarded as a police regulation and are not in conflict with any constitutional provision, either state or Federal, on the ground of inequality of burdens resulting from the operation of the law. We think this is the most reasonable rule and should control in this state.

In *Village of Carthage v. Frederick, supra*, the court said:

"But how is it possible for the authorities of a large city, with many hundred miles of streets, to remove the snow in time to prevent injury to those who have the right to travel upon the sidewalks unless they can require the owners and occupants of adjacent property to remove it? Every man can conveniently and promptly attend to that which is in front of his own door, and it is both reasonable and necessary that he should be compelled to do so. We think that the ordinance under consideration is valid; that it conflicts with no provision of the constitution, and that it is the duty of the courts to enforce it."

So in this case, with many miles of highways in a county, it would be utterly impossible for the county authorities to keep noxious weeds from the highways. It is a comparatively easy matter for the owners of land abutting thereon to destroy these noxious weeds. Their destruction is a benefit principally to the property owners, because, if the property owners are required to destroy the noxious weeds upon their lands and such weeds are permitted to grow in the highways, the destruction of the weeds upon their lands is of no practical benefit. It is necessary that the weeds upon the highways be destroyed as well as those upon the adjoining lands. It is reasonable, we think, that the owners of lands may be required to destroy noxious weeds to the center of the highways abutting thereon as a special benefit to their own lands.

While, as we have said, no case has been cited or found by us directly in point upon the question under consideration, we are satisfied that the rule relating to snow and ice upon sidewalks is of the same general character as that relating to noxious weeds in highways, and that the rule which permits the abatement of the one nuisance will also permit the abatement of the other.

We think the judgment of the lower court was right, and it is therefore affirmed.

CROW, C. J., MORRIS, and FULLERTON, JJ., concur.