## NATHANIEL GODDARD, Petitioner, &c.

A statute providing that prosecutions for violations of the by-laws of a city may be in the name of the Commonwealth, is not unconstitutional, notwithstanding that in prosecutions in that form the defendant is not allowed costs on acquittal.

The making and regulation of streets in the city of Boston is provided for exclusively by special statutes; consequently a by-law containing a provision for removing snow in the streets differing from the provision in the general statute of 1786, c. 81, concerning the laying out and regulation of highways, is not repugnant to this statute.

A by-law of a city requiring the owners or occupants of houses bordering on streets, to clear the snow from the side-walks adjoining their respective houses and lands, is not strictly speaking a by-law levying a tax; and inasmuch as the burden created by it is imposed on a numerous class, and upon all persons equally who come within the description of such class, and as they commonly derive a peculiar benefit from the duty required, and are peculiarly able to perform it with the promptness which the good of the community demands, the by-law is not partial and unequal within the sense of the provision in the constitution, that assessments, rates, and taxes imposed and levied on the inhabitants of the Commonwealth shall be proportional and reasonable; but such by-law is reasonable and valid.

Such a by-law is not invalid on account of a part of the city peculiarly situated being expressly exempted from its operation.

PETITION for a certiorari to the Municipal Court for the city of Boston.

In January 1835, the city marshal of Boston made a complaint to the Police Court, in the name of the Commonwealth, against Goddard, as the occupant of a house and lot of land situate on Kingston Street, in the city of Boston, and not in that part of the city called South Boston, for neglecting and refusing to remove the snow from the side-walk in Kingston Street, adjacent to his land. The defendant was sentenced to pay a fine and costs, and he appealed to the Municipal Court.

At the trial in that court it was admitted, that the facts alleged in the complaint were true. *S. D. Parker*, county attorney, and *B. R. Curtis*, in support of the complaint, read the 17th section of the city ordinance passed on August 22, 1833, viz. that " the tenant, occupant, and in case there shall be no tenant, the owner of any building or lot of land bordering on any street, lane, court, or public place within the city, (excepting that part of the city called South Boston,) where

there is any foot way or side walk, shall after the ceasing to fall of any snow, if in the day time, within six hours, and if in the night time, before two of the clock in the afternoon succeeding, cause the same to be removed therefrom ; and in default thereof shall forfeit and pay a sum not less than one dollar, and not more than four dollars, for each and every day that the same shall afterwards remain on such foot way or side walk ; " also, the clause from the 15th section of the city charter, (*St.* 1821, *c.* 110,) which declares, "that the mayor and aldermen and common council of the said city shall have power to make all such needful and salutary by-laws, as towns, by the laws of this Commonwealth, have power to make and establish ; and to annex penalties, not exceeding twenty dollars, for the breach thereof ; " also the clause in *St.* 1785, *c.* 75, § 7, which empowers the inhabitants of any town "to make and agree upon such necessary rules, orders, and by-laws for the directing, managing and ordering the prudential affairs of such towns, as they shall judge most conducive to the peace, welfare and good order thereof."

It was contended by *Bartlett*, for the defendant, that the *St.* 1817, *c.* 50, which declares that all fines, forfeitures and penalties accruing within the town of Boston, for the breach of any by-law of the town, may be recovered by indictment, information or complaint, in the name of the Commonwealth, was not warranted by the constitution, inasmuch as these by-laws being matter of private right, the parties in litigation should be placed on an equality as to the costs of suit. But the judge (*Thacher*) ruled, that the mode of prosecuting in these cases, in the name of the Commonwealth, was legal.

The defendant's counsel moved the court to instruct the jury, that the by-law in question was inoperative and void ;—- 1. Because it is repugnant to and inconsistent with the statutes of the Commonwealth relative to the same subject matter, particularly *St.* 1786, *c.* 81, and *St.* 1796, *c.* 58 ;— 2. Because it creates and assesses a tax for the amendment and repairs of the highways, in a manner inconsistent with the provisions of those statutes, and so repugnant to the act establishing the city of Boston, (*St.* 1821, c. 110, § 15,) which provides "that in the assessment and apportionment

of all such taxes upon the polls and estates of all persons liable to contribute thereto, the same rules and regulations shall be observed as are now established by the laws of this Commonwealth, or may be hereafter enacted, relative to the assessment and apportionment of town taxes " ; — 3. Because it imposes an assessment, rate or tax upon certain persons, occupants or owners of land in the city alone, and so the tax is not proportional and reasonable, and is therefore repugnant to the constitution of this Commonwealth ; — 4. Because it imposes an assessment, rate or tax upon part only of certain persons, owners and occupants of land in the city, inasmuch as it does not extend to owners and occupants of land in South Boston, and so the tax is not proportional and reasonable, but is repugnant to the constitution and laws of this Commonwealth ; — 5. Because the by-law is wholly unjust and unreasonable, inasmuch as it is an unequal apportionment of the public burdens, and is a tax imposed without the consent of the people expressed by an act of the legislature. Constitution, *part* 2, *c.* 1, *art.* 4 ; Declaration of Rights, *art.* 23. But the judge instructed the jury, that the by-law was valid and effectual ; that the *St.* 1786, *c.* 81, and *St.* 1796, *c.* 58, were never intended to apply to Boston, and at least that they ceased to apply after the enactment of *St.* 1799, *c.* 31, and therefore the by-law was not repugnant to them ; that the by-law does not impose a tax on property, but rather a personal duty, and not an unreasonable one, on the occupants of real estate adjacent to side walks, to remove the snow in front of their land ; that as the *St.* 1803, *c.* 111, by which a part of Dorchester, now called South Boston, was annexed to Boston, provides that " the town of Boston shall not be obliged to complete the streets laid out by their selectmen pursuant to this act, sooner than they may deem it expedient so to do," and no evidence had been offered to show that the streets in South Boston had been adopted by the city, there was good reason for the discrimination which the by-law made in favor of South Boston.

The jury found a verdict against the defendant, and he was sentenced to pay a fine of four dollars and costs of suit.

The defendant filed exceptions to the instructions of the judge, and now petitioned for a certiorari in order that the sentence might be reversed.

*Bartlett* insisted on the exceptions.

*C. P. Curtis*, in behalf of the city of Boston, cited, as to the power of the city to make by-laws and prosecute in the name of the Commonwealth, *St.* 1821, *c.* 110, § 15; *St.* 1785, *c.* 75, § 7; *Commonwealth v. Worcester*, 3 Pick. 462; *Vandine, Petitioner*, 6 Pick. 187; *Nightingale, Petitioner*, 11 Pick. 171; to the point, that this by-law was a reasonable one, Com. Dig. *Bye-Law*, *B* 1, *B* 4; Angell and Ames on Corporations, 186; that it was not repugnant to any statute, *St.* 1786, *c.* 81, § 1; *Rogers v. Jones*, 1 Wendell, 261; and that it was not repugnant to the constitution, that it did not impose a tax, and that in many other instances the personal services of citizens are required without any provision for compensation, *St.* 1786, *c.* 38; *St.* 1795, *c.* 68, § 1; *St.* 1796, *c.* 88, § 2; *St.* 1797, *c.* 16, § 5; *St.* 1814, *c.* 170, § 1; *St.* 1785, *c.* 70, § 16; *St.* 1785, *c.* 75.

SHAW C. J. delivered the opinion of the Court. No question is made of the facts in this case, but it is conceded, that the petitioner did not clear the side walk in front of his land, in the manner required by the by-law of the city, and he justifies this on the ground that the law itself is invalid and of no binding force. For the purpose of having this question deliberately considered, and for the purpose of taking several exceptions to the course of proceedings, the petitioner has prayed for a writ of certiorari to the Municipal Court.

*June 22a*

1. The first objection is, that the law authorizing a prosecution for breach of the by-laws of the city, in the name of the Commonwealth, is unequal and unjust, because it has the effect of preventing the defendant from recovering costs, in case he shall prevail in his defence.

This objection was taken in *Commonwealth v. Worcester*, 3 Pick. 462, and decided not to be valid. The question goes to the policy and justice of not allowing a defendant his necessary costs, in cases of public prosecution, where he is acquitted, and yet it is well established, that costs are

Goddard,
Petitioner
&c.

not allowed in such cases.   There is no difference in prin
ciple, between a prosecution for breach of a by-law, made
to promote the health, safety and convenience of the inhab-
itants of a large city, and a like prosecution, for nuisance or
other misdemeanor, made such by common law or by statute.
In both cases the law is made by competent authority, the
object of it is, the health, comfort and safety, of the commu-
nity, and in both cases, a violation of it is a public injury,
done to the whole community, and the prosecution is for the
purpose of compelling obedience, as well by the offender
as by others.   If it were to enforce a private right by the
city, there would be weight in the objection, and it would
stand on different grounds.   Being a by-law made to enforce
a police regulation, a prosecution for the breach of it is
strictly a public prosecution, and there seems to be no im-
propriety or incongruity in authorizing a prosecution in the
name of the Commonwealth, and it is no valid objection
to this provision of law, that in prosecutions in the name
of the Commonwealth defendants are not allowed costs on
acquittal, because the objection is common to this and all
other prosecutions in the name of the Commonwealth, for
the violation of laws made for the public good.

2. The next objection is, that the by-law is repugnant
to the general laws of the Commonwealth, because the
general statute, made for the location and regulation of
highways, *St.* 1786, *c.* 81, makes a different provision for
the removal of snow.   Several answers were suggested to
this objection ; we think one is decisive, which is, that by
several special acts, the whole proceedings in regard to the
making and regulating streets and highways in Boston, is
taken from the operation of the general law, and regulated
exclusively by these acts.   The statute of 1786, we think,
is not in force in this city, and therefore the supposed re-
pugnance between this by-law and that statute does no
exist.   *St.* 1799, *c.* 31 ; *St.* 1804, *c.* 73, &c.

3. Another, and perhaps the most important objection, is,
that the by-law is one imposing a tax or duty upon the
citizens, and it is a violation of the constitution in this,
that it is partial, and unequal, and contravenes that funda-

mental maxim of our social system, that all burdens and taxes laid on the people for the public good shall be equal.

But the Court are all of opinion, that the by-law in question is not obnoxious to this objection.

It is not speaking strictly, to characterize this city ordinance as a law levying a tax, the direct or principal object of which is, the raising of revenue. It imposes a duty upon a large class of persons, the performance of which requires some labor and expense, and therefore indirectly operates as a law creating a burden. But we think it is rather to be regarded as a police regulation, requiring a duty to be performed, highly salutary and advantageous to the citizens of a populous and closely built city, and which is imposed upon them because they are so situated as that they can most promptly and conveniently perform it, and it is laid, not upon a few, but upon a numerous class, all those who are so situated, and equally upon all who are within the description composing the class.

It is said to be unequal, because it singles out a particular class of citizens, to wit, the owners and occupiers of real estate, and imposes the duty exclusively upon them.

If this were an arbitrary selection of a class of citizens, without reference to their peculiar fitness and ability to perform the duty, the objection would have great weight, as for instance, if the expense of clearing the streets of snow were imposed upon the mechanics, or merchants, or any other distinct class of citizens, between whose convenience and accommodation, and the labor to be done, there is no natural relation. But suppose there is a class of citizens who will themselves commonly derive a benefit from the performance of some public duty, we can see no inequality in requiring that all those who will derive such benefit, shall by a general and equal law be required to do it. Supposing a by-law should require every inhabitant, who keeps a cart, truck or other team, or a coach or other carriage, to turn out himself or send a man, with one or more horses, after each heavy fall of snow, to assist in levelling it. Although other citizens would derive a benefit, yet as these derive some peculiar benefit, accompanied with the

Goddard,
Petitioner
&c.

ability, I can at present perceive no valid objection to a by-law requiring it, on the ground of inequality. Supposing a general regulation, that at certain seasons of the year, every shop-keeper should sprinkle the side walk in front of his own shop, or sweep it, inasmuch as he has a peculiar benefit, and as the duty is equal upon all who come within the description, it seems to us to be equal, in the sense in which the law requires all such burdens to be equal. And it appears to us that the case before us is similar. Although the side walk is part of the public street, and the public have an easement in it, yet the adjacent occupant often is the owner of the fee, and generally has some peculiar interest in it, and benefit from it, distinct from that which he enjoys in common with the rest of the community. He has this interest and benefit, often in accommodating his cellar-door and steps, a passage for fuel, and the passage to and from his own house to the street. To some purposes therefore it is denominated his side-walk. For his own accommodation, he would have an interest in clearing the snow from his own door. The owners and occupiers of house-lots and other real estate, therefore, have an interest in the performance of this duty, peculiar and somewhat distinct from that of the rest of the community.

Besides, from their situation, they have the power and ability to perform this duty, with the promptness which the benefit of the community requires, and the duty is divided, distributed and apportioned upon so large a number, that it can be done promptly and effectually, and without imposing a very severe burden upon any one. Supposing a by-law should require, what is often done, in practice, that upon an alarm of fire in the night, all householders, on streets leading to and near the fire, should exhibit a light. This would seem to be reasonable. Or that all the owners or occupiers of dwellinghouses, having a well and pump, should keep them in repair at their own expense, to be used in case of fire. It would operate partially, but it seems to us not unequal, in the sense in which we are using that term. The city might keep persons ready in every street, to light torches and flambeaux in case of fire, and the ex-

pense be paid from the treasury ; still it appears to me, that as householders would derive a benefit from the operation of this general regulation, as their local situation puts it peculiarly within their power and ability to perform it without great expense, and as it is equal in its terms, it would not be obnoxious to the charge of being invalid for partiality and inequality.

In all these cases the answer to the objection of partiality and inequality is, that the duty required is a duty upon the person in respect to the property which he holds, occupies and enjoys, under the protection and benefit of the laws, that it operates upon each and all in their turns, as they become owners or occupiers of such estates, and it ceases to be required of them, when they cease to be thus holders and occupiers of the estate, in respect to which the duty is required. In this respect it is like a land tax, or house tax, it does not bear upon owners of personal property, and therefore does not bear upon all citizens alike, but is not on that account unequal or partial, in the sense contemplated by the Declaration of Rights, requiring all taxes and burdens to be equal and impartial.

The Court are all of opinion, that as a by-law, the regulation in question was a reasonable one, that it was not repugnant to the constitution or laws of the Commonwealth and that the conviction was right.

*Petition dismissed.*