## KANSAS CITY v. EDWARD E. HOLMES, Appellant.

#### Division One, April 8, 1918.

1. **SIDEWALKS: Ice and Snow.** A city has power, under the Constitution of Missouri and appropriate charter ability, through the medium of penal ordinances, to require each owner to remove snow and ice from the public sidewalk in front of his urban property.

2. ———: ———: **Inapt Constitutional Provisions.** Neither Section 4 of Article 2 of the Constitution, providing that all persons have a natural right to life, liberty and the enjoyment of the gains of their own industry, nor Section 21 of the same article, providing that private property shall not be taken or damaged for public use without just compensation, nor Section 31 of the same article, providing that there cannot be in this State either slavery or involuntary servitude except as punishment for crime, has any reference or relation to the validity of an ordinance requiring the owner of abutting property to remove ice and snow from the sidewalk and fixing a moderate fine for failure to do so.

3. **POLICE POWER: Comprehensiveness.** The police power does, not confer on the whole people, represented by the lawmaking branch of the government, authority to control rights which are purely and exclusively private; but it is the power, inherent in every government, to regulate the conduct of citizens toward each other in such a way that all may exercise that measure of liberty of action consistent with the welfare and freedom of others. It includes the power to establish laws requiring each citizen to so conduct himself, and to so use his property, as not unnecessarily to injure another.

4. ———: **Removal of Snow and Ice: Benefit to Abutting Owner: Public Convenience.** The same governmental principle by which the Legislature may construct sidewalks and reconstruct and repair them when they have fallen into decay, by charging the expense as a tax against the abutting property, applies with equal force

to the compulsory removal by the owner of ice and snow there-from. But it does not rest wholly upon the special benefit conferred; the matter of public convenience, which all persons must consider in the use of their property, is also an element in the imposition of the burden. The right to impose the burden is an incident to the exercise of the police power by which urban conditions and values are created.

5. ———: ———: ———: **Equality of Burden.** It is not necessary to the validity of the exercise of a police power that it distribute the burden imposed with mathematical certainty. To compel each owner of property abutting on a street to remove the ice and snow from the front sidewalk is a distribution of the burden according to public convenience and justice.

Appeal from Jackson Criminal Court.—*Hon. Ralph S. Latshaw*, Judge.

AFFIRMED.

*Cook & Gossett* for appellant.

(1) It is an infraction of the constitutional right to life, liberty and the enjoyment of the gains of a person's own industry, to compel him to shovel, or to hire to be shoveled, snow off a sidewalk in a public street which is under the exclusive control of the city, when the snow got there by falling out of the clouds in the course of nature and without any act of omission or commission, or intent of defendant. The city has complete and exclusive control of its streets. Sec. 1, art. 3, Cl. 11, Kansas City Charter (1909, p. 83); Sec. 9752, R. S. 1909. It is the city's duty to keep its streets, including sidewalks, in reasonably safe condition for travel —a governmental duty—and not a matter of police regulation, and therefore cannot be shifted under a claim of police regulation. Jackson v. Railway, 157 Mo. 621; Beck v. Brewing Co., 167 Mo. 195; Ford v. Kansas City, 181 Mo. 137; St. Louis v. Allen, 53 Mo. 44. (2) It is unconstitutional deprivation of property without due process of law for a city having exclusive control of its streets, including sidewalks, as Kansas

City has, to compel a person by sentence of fine or imprisonment, or both, to remove snow falling naturally upon one of such sidewalks, even though it is in front of such person's property, unless all citizens are compelled to work generally on the streets irrespective of place on which work is to be done or property ownership. St. Louis v. Allen, 53 Mo. 44; St. Louis v. Speigel, 75 Mo. 145; Town v. Norman, 72 Mo. 380; Elting v. Hickman, 172 Mo. 237; St. Louis v. Dreisoerner, 243 Mo. 217; Barber Co. v. St. Joe, 183 Mo. 455. His other property might be taken and sold under process to pay this fine if he may be so fined. This may not be constitutionally done by any court. St. Louis v. Allen, 53 Mo. 44; Barber Co. v. St. Joe, 183 Mo. 451. (3) It is also a plain species of involuntary servitude to compel a property owner, merely because he is such, to shovel snow naturally falling on a sidewalk in a public street of Kansas City, such compulsion being sought to be enforced by fine or imprisonment, or both, and not applying to all citizens irrespective of property owned and residence. Authorities supra. Such ordinance is unreasonable, unjust and void unless it applies practically to at least all able-bodied citizens, irrespective of property ownership. St. Louis v. Allen, 53 Mo. 44; Town v. Norman, 72 Mo. 380; St. Louis v. Roche, 128 Mo. 542; Elting v. Hickman, 172 Mo. 237; Kansas City v. Whipple, 136 Mo. 475. (4) It is also unconstitutional to compel an owner to pay for the removal of snow falling naturally upon the sidewalk in a public street in Kansas City, in that it is thereby taxing him without uniformity of taxation for the removal of such snow. Gridley v. Bloomington, 88 Ill. 554; Chicago v. O'Brien, 111 Ill. 532; State v. Jackman, 69 N. H. 318; St. Louis v. Spiegel, 75 Mo. 145; Kansas City v. Whipple, 136 Mo. 475. Non-resident property owners cannot be guilty or fined or imprisoned under this ordinance unless happening to be in Kansas City. Snow does not fall and remain upon sidewalks to the same extent in varying though adjoining locations,

274 Sup.—11.

and the burden of removal varies with the location. It may fall and remain to the same extent in front of valuable as in front of cheap property of the same dimentions and the man rich in personalty, but with no realty, travels the street with same benefit, so far as the snow is concerned, as the landowner. Snow and ice are matters of mere temporary inconvenience or convenience in travel, and removal of the same impossible of any pecuniary benefit to the realty or to the owner of vacant realty more than to the ordinary traveler on the street. (5) Although Kansas City has power under its charter to require by special tax bills property owners to pay for special improvements on the sidewalk or street thereon without regard to its value, nevertheless, all such special tax bills are based upon the theory of special benefits accruing and Kansas City is not by its charter given authority to issue special tax bills for such temporary care of streets as the removal of snow. And compelling the owner by penalty of fine or imprisonment to remove snow from the sidewalk in the street over which the city has exclusive control is a species of taxation not justifiable upon the theory of special benefits, and necessarily it is disproportionate to the value of the property, and also unconstitutional for that reason. Kansas City v. O'Connor, 82 Mo. App. 655-660; St. Louis v. Allen, 53 Mo. 44; Barber Co. v. St. Joseph, 183 Mo. 451.

*J. A. Harzfeld, B. N. Mosman* and *A. F. Smith* for respondent.

A city has the right to require by penal ordinance that each property owner clean the snow from the public sidewalk in front of his property. Norton v. St. Louis, 97 Mo. 537; St. Louis v. Ins. Co., 107 Mo. 96; Ford v. Kansas City, 181 Mo. 147; Goddard, Petitioner, 16 Pick. (33 Mass.) 504; Carthage v. Frederick 122 N. Y. 268; State v. McCrillis, 28 R. I. 165; State v. McMahon, 76 Conn. 105; Helena v. Kent, 32 Mont. 279; Lincoln v. Janesch, 63 Neb. 707; McQuillin on Mun. Corp., sec.

924; Dillon on Mun. Corp. (5 Ed.), sec. 713; Freund on Police Power, sec. 620.

BROWN, C.—This case was instituted in Municipal Court Number Two for Kansas City, Missouri, upon complaint of the city counselor, charging the defendant with a violation of sections 563 and 626 of the Revised Ordinances of the city of 1909, in that he unlawfully failed and neglected to remove from the sidewalk, in front of property owned by him, ice and snow which obstructed and rendered the sidewalk dangerous, inconvenient and annoying to persons residing in the neighborhood traveling over the sidewalk.

The defendant was found guilty, and a fine of five dollars assessed. An appeal was taken to the criminal court for Jackson County, where upon trial he was again found guilty and the same fine assessed and judgment entered accordingly. Motions for a new trial and in arrest of judgment were overruled and in due time this appeal was taken.

The cause was submitted in the criminal court without a jury upon an agreed statement of facts, by which it was stipulated that defendant was the managing officer of the corporation which owned the land abutting upon the sidewalk on which the snow in question had fallen and lay, and that he made no point that he did not occupy the position of owner; that at the time mentioned in the complaint there was a fall of snow upon the sidewalk rendering it dangerous, inconvenient and annoying to persons walking thereon; and that he did not remove the snow, as charged in the complaint; that the sidewalk, street and abutting property were within the limits of the city; that the sole question involved in the case was and is the validity of the city ordinances on which the complaint was founded. The validity of the ordinances was challenged in the trial court and upon this appeal on the ground that they are in conflict with the provision of Section 4 of Article 2 of the Constitution of the State which declares that all

persons have the natural right to life, liberty and the enjoyment of the gains of their own industry; also with Section 21 of the same article, providing that private property shall not be taken or damaged for public use without just compensation; also with the provision of Section 30 of the same article that no person shall be deprived of life, liberty or property without due process of law; also with the provision of Section 31 of the same article that there cannot be in this State either slavery or involuntary servitude except as punishment for crime; also with Section 3 of Article 10 of the Constitution, which provides that taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the same; also with Section 4 of the last-mentioned article, providing that property subject to taxation shall be taxed in proportion to its value.

Sections 563 and 626 of the City Ordinances are as follows:

"*Ice, Snow, Etc—Repairs*—It shall be the duty of all persons, owning or occupying any real property, fronting upon any street, to keep the sidewalk, curbing and guttering in front and alongside of such property and on the same side of the street in good repair and order, and to clean the same, and remove from any such sidewalk, curbing and guttering all ice, snow, earth or other substance that in anyways obstructs or renders the same dangerous, inconvenient or annoying to any person.

"*Penalty.* Any person, firm or corporation failing, neglecting or refusing to comply with any provision of this chapter shall, on conviction, where no other penalty is provided, be fined in any sum not less than one nor more than five hundred dollars."

Appellant does not question that these ordinances are expressly authorized by Section 16 of Article 3 of the Kansas City charter.

We do not think that any of the constitutional provisions used as a weapon of attack against these or-

dinances have any relation or reference to the facts of this case with the exception of Section 30 of Article 2 providing that no person shall be deprived of life, liberty or property without due process of law, and Section 3 of Article 10 providing for the uniformity of taxes, and Section 4 of Article 10 which provides that property subject to taxation shall be taxed in proportion to its value. These three propositions can best be considered together, for the question at once arises as to what branch of the governmental powers these ordinances refer.

The police power, as was said by the Supreme Court of the United States in Munn. v. Illinois, 94 U. S. 113, 125, and repeated by this court in Houck v. Drainage District, 248 Mo. 373, 384, "are nothing more or less than the powers of government inherent in every sovereignty, . . . ; that is to say, . . . the power to govern men and things." To make possible its exercise it must call to its aid the subordinate power of taxation, which has for its office the raising of the necessary funds for the performance of those governmental functions which it assumes to exercise. The government is a social compact, by which the whole people convenant with each citizen and each citizen with the whole people, that they shall be governed by certain laws to be enacted for the public good. The terms of this compact are defined by the Constitution. By that instrument the Legislature was created, and invested with a power to enact laws for the common good, which is limited only by the terms of the Constitution itself. This does not confer power upon the whole people, represented by the lawmaking branch of the government, to control rights which are purely and exclusively private. These rights represent private ownership and are private property, the inviolability of which is guaranteed by Section 30 of Article 2 of our State Constitution, to which we have already alluded. The due process of law to which it refers consists of all laws enacted by the Legislature in pursuance of its powers.

These include the power, as was said by Chief Justice WAITE in the Munn case, supra, to establish law "requiring each citizen to so conduct himself, and so use his own property, as not unnecessarily to injure another. This is the very essence of government, and has found expression in the maxim *sic utere tuo ut alienum non laedas*. From this source come the police powers, which, as was said by Mr. Chief Justice TANEY in the License Cases, 5 How. 583, 'are nothing more or less than the powers of government inherent in every sovereignty, . . . that is to say, . . . the power to govern man and things.' This is the true test of the extent and character of the police power of the State. It governs everything necessary to regulate the conduct of citizens toward each other in such a way that all may exercise that measure of liberty of action consistent with the welfare and freedom of others.

Applying these principles to the matter here in controversy we find an excellent illustration of the rule which we have stated. It appears from the appellant's brief that the corporation which he represents is the owner of approximately 5000 feet of frontage along the sidewalk mentioned in the record. Some of the lands which originally belonged to him have been sold and are occupied by others representing the purchaser. The street as well as the sidewalk were like all public highways brought into being by the exercise of the police power of the State. It is the exercise of this power that has given the lands their urban character, and by which the whole people have assumed the responsibility for providing means by which these ways may be maintained for the use of all, and for the benefit such use confers upon the land of adjoining proprietors. The same governmental principle by which the Legislature may improve its streets, and construct sidewalks and reconstruct or repair them when they have fallen into natural decay, at the expense of adjoining proprietors, applies with equal force to the removal of such temporary obstructions as are the motif of this case. The

duty is charged upon the occupant of the property as well as the owner, and relates solely to the use of his own appurtenant easement in such manner as shall not injure others in the enjoyment of a use to which they are entitled. He is entitled to the use in common with all others. In addition to this he has a special right of ingress and egress appurtenant to his ownership or occupation of the land which is clearly an element of its value. Should he be cut off from this access, the right of the public in the street would remain unimpaired except as a means of communication with his property. The charter and ordinances before us are framed upon the theory that the preservation of this right is dependent upon the preservation of the condition upon which it rests. If it stops at his gate it does not exist. Although he may keep the walks within his lot swept and garnished it gives him no access to the street. A snow drift against his gate excludes him as completely as would an iron bar extended across it.

Laws of this class rest largely, although not entirely, upon these and other special benefits to those upon whom their burden is imposed. The matter of public convenience which, as we have already said, all must consider in the use of their property, is also an element in the imposition of the burden. A snow storm spreads itself as an obstruction over an entire city and the remedy must instantly spread itself over the same area to meet the emergency. It would be impossible otherwise than through the action of the law directly upon all in whose hands the remedy lay to meet the emergency. When this is done by the distribution of the burden upon those specially interested in the result the problem would seem to be well solved and public convenience and justice in the distribution of the burden are combined for the good of all. We need not wait until some Utopian scheme can be devised which would meet, with mathematical certainty, the conditions of every particular case. This duty of selection is necessarily inherent in the lawmaking department of every

constitutional government.   When in the exercise of
the police power it has acted, it becomes the duty of
every person within its jurisdiction to obey, unless he
can point to some constitutional guaranty which ab-
solves him from obedience.

This is the same power by which the citizens may
be compelled, at the direction of a peace officer, to come
to his assistance in the suppression of riot, to aid in
the extinguishment of fire, or to suffer his building to
be demolished for that purpose.   His person and his
property are at the disposal of the State whenever the
circumstances require that he, of all others, should be
selected for the service, either by reason or propinquity
or special interest or both.   This relation is to be de-
termined by the Legislature, subject to those limita-
tions prescribed by the Constitution for the protection
of private rights.

In Ford v. Kansas City, 181 Mo. 137, 147, we said:
"While there is respectable authority for the propo-
sition that a municipal corporation cannot impose
upon the citizen the obligation to keep the public side-
walk in front of his premises free from obstruction
by snow, etc., at his own expense (Gridley v. City of
Bloomington, 88 Ill. 554; Chicago v. O'Brien, 111 Ill.
532), the weight of authority is, however, the other way,
and in favor of the position tentatively stated in the
foregoing *dicta,* as to such power."

Examining these authorities, we find that the Illinois
cases cited have little or no support except in State v.
Jackman, 69 N. H. 318.   On the other hand, the cases
sustaining such ordinances are numerous, and the logic
of some of the opinions strikes us as unanswerable.
Among these are the following: Goddard, Petitioner,
33 Mass. 504; Clinton v. Welch, 166 Mass. 133; Common-
wealth v. Cutter, 156 Mass. 52, 55; Carthage v. Fred-
erick, 122 N. Y. 268; State v. McMahon, 76 Conn. 97,
105; Helena v. Kent, 32 Mont. 279; Reinken v. Fueh-
ring, 130 Ind. 382. Many other cases sustain the same
doctrine in principle.   It has been received and an-

nounced with favor by the text-writers. [Freund on Police Power, sec. 620; Dillon on Municipal Corporation, sec. 713; McQuillin on Municipal Corporation, sec. 924.] In this court it has at least been taken for granted that these ordinances, when, as in this case, authorized by the Legislature, are a valid exercise of the police power of the State [Norton v. St. Louis, 97 Mo. 537, 541-2; St. Louis v. Insurance Co., 107 Mo. 92; Ford v. Kansas City, 181 Mo. 137, 147.]

The ordinance in question is, in our opinion, a valid exercise of the police power of the State and constitutes no violation of any provision of the State Constitution to which our attention has been directed. The judgment of the criminal court for Jackson County is affirmed. *Railey, C.,* concurs.

PER CURIAM:—The foregoing opinion of BROWN, C., is adopted as the opinion of the court. All of the judges concur.

# CASES DETERMINED

## , BY THE

# SUPREME COURT

### OF THE

## STATE OF MISSOURI

### AT THE

## APRIL TERM, 1918.