## Commonwealth v. Watson.

(Decided March 6, 1928.)

Appeal from Webster Circuit Court.

1. Highways.—Legislature has power to require owners or occupants of land to remove weeds, brush, or other obstructions from highway adjoining their premises.

2. Highways.—Purpose of Ky. Stats., secs. 4342a1-4342a3, requiring owners or occupants of property to remove weeds, brush, and other

obstructions from highway adjoining their premises, was to promote public safety by making highway free of obstructions and to provide clear view so accidents might be avoided and citizens' lives and property protected, and such statutes are within Legislature's police power.

3.    Constitutional Law.—Ky. Stats., secs. 4342a1-4342a3, requiring occupants and owners of property to remove weeds, brush, and other obstructions from highway adjoining premises, deals with situation that cannot be effectually met by fiscal court, and operates alike on all similarly situated, and is not unconstitutional as discriminatory.

4.    Highways.—Ky. Stats., secs. 4342a1-4342a3, requiring owners or occupants of property to remove brush, weeds, or other obstructions from highway in front of premises, is broad enough to include bushes, weeds, and the like within the limits of highway.

5.    Eminent Domain.—Indictment for violation of Ky. Stats., secs. 4342a1-4342a3, requiring owners and occupants of premises to remove from highway adjoining premises weeds, brush, and similar obstructions, held not demurrable on ground that statutes were unconstitutional as discriminatory and taking private property for public use without due compensation.

FRANK E. DAUGHERTY, Attorney General, and J. M. RAYBURN for appellant.

OPINION OF THE COURT BY CHIEF JUSTICE CLAY—
Reversing.

Sections 4342a1, 4342a2, 4342a3, Kentucky Statutes, are as follows:

"4342a1.   That it shall be the duty of every owner, controller and manager of lands bordering and abutting on the public highways of this commonwealth, for the distance which their said land so abuts, and borders, when so ordered by the fiscal court of his county, to cut, clear away, remove and carry from alongside the public highways, all bushes, weeds, shrubs and overhanging limbs of trees and all other such obstructions along such highways, and to keep all hedge fences along such highway so trimmed and cut back that same at no time will become more than five feet high."

"4342a2.   The brush, bushes, weeds, overhanging limbs of trees and all other obstructions along the highways of the several counties of this commonwealth are to be removed therefrom between the 1st day of July and the 20th day of August of every

year, and it shall be the duty of the county road engineer of the several counties of this commonwealth to publish in some county paper of the county in which they act for at least two consecutive weeks before the first day of July of every year and to give notice by handbills posted in not less than ten conspicuous places in each voting precinct of their counties outside of the incorporated towns, the requirements of this act and the duties incumbent on such persons as own, control and manage lands bordering and abutting on the public highways.''

"4342a3.  Every person who violates the provisions of this act by failure to perform the duties as herein required shall on conviction be fined in a sum of not less than twenty dollars ($20.00) nor more than fifty dollars ($50.00).  And the county road engineer shall on conviction be fined in the sum of not less than twenty-five dollars ($25.00) nor more than one hundred dollars ($100.00) for his failure to publish the notices as herein required.''

In the month of December, 1926, the grand jury of Webster county returned an indictment against Ben Watson charging him with a violation of the foregoing statute.  The allegations of the indictment are sufficient to charge an offense under the statute, but a demurrer was sustained to the indictment, and the indictment was dismissed, on the ground that the statute is unconstitutional.

The ground on which the statute was held unconstitutional is that it is discriminatory, and takes private property for public use without due compensation. While there is authority to the contrary (Chicago v. O'Brien, 111 Ill. 532, 53 Am. Rep. 640; State v. Jackman, 69 N. H. 318, 41 A. 347, 42 L. R. A. 438; McGuire v. District of Columbia, 24 App. D. C. 22, 65 L. R. A. 430), the weight of authority, and the better reasoning, is to the effect that the Legislature of a state may authorize a municipal corporation by ordinance to require property owners to remove snow and ice from sidewalks in front of their property.  Flynn v. Canton Co., 40 Md. 312, 17 Am. Rep. 603; In re Goddard, Petitioner, 16 Pick. (Mass.) 504, 28 Am. Dec. 259, and note; Kirby v. Boylston Market Ass'n, 14 Gray (Mass.) 249, 74 Am. Dec. 682; St. Louis v. Connecticut, etc., Ins. Co., 107 Mo. 92, 17 S. W. 637, 28 Am. St. Rep. 402; Helena v. Kent, 32 Mont. 279, 80 P. 258, 4

Ann. Cas. 235, and note; Lincoln v. Janesch, 63 Neb. 707, 89 N. W. 280, 56 L. R. A. 762, 93 Am. St. Rep. 478; Carthage v. Frederick, 122 N. Y. 268, 25 N. E. 480; 19 Am. St. Rep. 490, 10 L. R. A. 178, and note; State v. McCrillis, 28 R. I. 165, 66 A. 301, 9 L. R. A. (N. S.) 635, 13 Ann. Cas. 701; Kansas City v. Holmes, 274 Mo. 159, 202 S. W. 392, L. R. A. 1918D, 1016.

In Carthage v. Frederick, supra, the court said:

"But how is it possible for the authorities of a large city, with many hundred miles of streets, to remove the snow in time to prevent injury to those who have the right to travel upon the sidewalks unless they can require the owners and occupants of adjacent property to remove it? Every man can conveniently and promptly attend to that which is in front of his own door, and it is both reasonable and necessary that he should be compelled to do so. We think that the ordinance under consideration is valid, that it conflicts with no provision of the Constitution, and that it is the duty of the courts to enforce it."

In discussing the question in Re Goddard, supra, Chief Justice Shaw, said:

"It is not speaking strictly, to characterize this city ordinance as a law levying a tax, the direct or principal object of which is the raising of revenue. It imposes a duty upon a large class of persons, the performance of which requires some labor and expense, and therefore indirectly operates as a law creating a burden. But we think it is rather to be regarded as a police regulation, requiring a duty to be performed, highly salutary and advantageous to the citizens of a populous and closely built city, and which is imposed upon them because they are so situated as that they can most promptly and conveniently perform it, and it is laid, not upon a few, but upon a numerous class, all those who are so situated, and equally upon all who are within the description composing the class."

In the case of State v. McMahon, 76 Conn. 97, 55 A. 591, the court used the following language:

"A city covering a very few square miles of territory may readily have 500 miles of sidewalks.

To keep these walks clean and safe will promote the public health and safety, and also contribute to the value of every abutting piece of land to which they form the necessary entrance and whose owners and occupiers represent substantially the inhabitants of the city. A purely corporate oversight of these walks could not adequately meet all the emergencies affecting their cleanliness and safety, especially those emergencies of storm and cold which in this climate render constant oversight and immediate remedy imperative. The inhabitants of a city, being the owners and occupiers of abutting land, are the ones, and practically the only ones, in a situation to render the aid convenient if not necessary to effectually secure that cleanliness and safety which promotes alike the general welfare and their personal interests. The rendition of this aid involves a slight burden, insignificant in comparison with the benefits secured. We think it clear that in requiring such aid the Legislature acts within its legitimate legislative province of defining and enforcing the duties arising under such conditions. A law which merely accomplishes this purpose is valid.

"To say that it is possible for the Legislature under cover of a law purporting to be of this kind, to accomplish actual confiscation of property, or the subjection of citizens to partial and arbitrary discriminations, is to state a proposition which may be sound, but not relevant to the facts of this case. To say that a law defining the duties of citizens in serving the state is necessarily a violation of the constitutional guaranties against the confiscation of property and partial and arbitrary discriminations, because the service is unpaid, or is one that all citizens are not in a situation to render, is to state a proposition which is radically unsound. Such a theory of selfish immunity from all duties inherent in citizenship is supported by no principle of political ethics, and cannot safely be reduced to practice under any government."

In speaking of the police powers in Kansas City v. Holmes, supra, the court said:

"This is the same power by which the citizen may be compelled, at the direction of a peace officer, to come to his assistance in the suppression of riot,

to aid in the extinguishment of fire, or to suffer his building to be demolished for that purpose. His person and his property are at the disposal of the state whenever the circumstances require that he, of all others, should be selected for the service, either by reason of propinquity, or special interest, or both. This relation is to be determined by the Legislature, subject to those limitations prescribed by the Constitution for the protection of private rights.''

The doctrine announced in the foregoing cases is clearly applicable to the question under consideration, for if the Legislature may authorize a municipality to require the owners or occupants of property to remove the snow and ice from the sidewalks in front of their premises, certainly the Legislature has the power to require the owners or occupants of land to remove weeds, brush, and other obstructions from the highway adjoining their premises. The purpose of the statute was to make the highway free of all obstructions and to provide a clear view along the highway, to the end that accidents may be avoided and the lives and property of the citizens be properly protected. In other words the statute was enacted for the public safety, which has always been regarded as a proper subject of the police power. It deals with a situation that cannot be met effectually by the fiscal court, and it operates alike upon all persons similarly situated. It not only imposes an obligation upon those who by reason of their peculiar situation are best able to perform it but the work required is a distinct benefit to them or their property. Moreover, the duty thus imposed does not differ materially either in kind or degree from the duties which have been imposed upon our citizens since the foundation of the commonwealth, and which have always been recognized as valid, such as the duty to work a public road, or to assist an officer in the performance of his duty, or to permit the destruction of one's property when the circumstances require it. We are therefore of the opinion that the statute is valid. A similar conclusion was reached by the Supreme Court of Washington in Northern Pacific R. Co. v. Adams County, 78 Wash. 53, 138 P. 307, 51 L. R. A. (N. S.) 274, where the court upheld an act requiring the owner of land abutting on the public highway to cut noxious weeds growing upon the highway and making the cost thereof a lien on his land.

Considering the language employed, and the purpose to be accomplished, we conclude that the act is broad enough to include bushes, weeds, etc., within the limits of the highway.

It follows that the demurrer to the indictment should have been overruled.

Judgment reversed and cause remanded for proceedings consistent with this opinion.

Whole court sitting.